*In re* MARRIAGE OF ANTHONY J. MANUELE, JR., Petitioner-Appellee, and MARGERY E. MANUELE, Respondent-Appellant.

Fourth District No. 17659

Opinion filed July 22, 1982.—Rehearing denied August 20, 1982.

Leahy and Leahy, of Springfield (Mary Lee Leahy, Andrew J. Leahy, and Cheryl S. Redfield, of counsel), for appellant.

Michael B. Metnick, of Costello, Young & Metnick, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This appeal is from an order of the circuit court of Sangamon County entered in a proceeding under the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*). That order awarded the custody of the children of the parties whose marriage was dissolved to the husband and wife jointly with the "physical custody" given to the wife subject to specified visitation by the husband. We conclude that an award of joint or divided custody, as made here, is usually an unworkable arrangement. Such an order should rarely be entered, and its use should be discouraged. The order was not justified here. We reverse and remand with directions.

The proceeding was initiated by the husband, petitioner Anthony J. Manuele, Jr., when he filed a petition seeking separate maintenance against the respondent wife, Margery E. Manuele, on January 8, 1980. An amended petition seeking dissolution was filed April 14, 1980. The

custody order was entered February 18, 1981, and became final on December 8, 1981, when the court entered an order disposing of all remaining issues in the case. In addition to asserting on appeal that the circuit court abused its discretion in vesting petitioner with joint custody rights, respondent also claims the court erred in conditioning her physical custody of the children upon the children continuing to "reside in the Springfield" area which was defined in the custody order as being within Sangamon County.

Twenty-two witnesses testified at the custody hearing. We need not make a lengthy summary of the evidence. The underlying facts were not disputed. The parties were married October 25, 1975. At that time, respondent had a two-year-old daughter, Faye Marie. On August 20, 1976, a son, Anthony J. Manuele III, was born to the parties. In October 1976, petitioner became an adoptive parent of Faye Marie. Petitioner was an employee of the City of Springfield Street Department, and respondent was unemployed at the time of the marriage but obtained employment at a local bowling alley where she worked at night supervising a nursery. She sometimes took the children with her to the nursery. Her evidence indicated she took the children with her three or four times per week, while petitioner's evidence indicated she did so only infrequently. In any event, when she did not take them with her, petitioner cared for them at home.

In November of 1979, the parties separated following an argument between them, apparently over the disciplining of Faye. Petitioner struck Faye during the argument. A social worker who had been counseling the family and who was called as a witness by petitioner described the bruises received by Faye as being so severe that she considered petitioner to have abused Faye. Respondent took the children with her, living for awhile at a center for women in Springfield and then joining her parents, who had moved to Moscow, Idaho. During the summer of 1980, the children lived with their father in Springfield.

The evidence indicated that a principal dispute between the parties concerned the proper disciplining of the children. Some evidence indicated Faye's relationship with petitioner had been damaged by the incident when he hit her, by other discipline he imposed on her, and because he favored the male child. Much of the testimony concerned this relationship, but we do not consider this evidence to be crucial to our decision. Rather, we consider the crucial fact to be that the parties were in dispute over the manner of the children's upbringing and were unable to agree. The record indicates that problems constantly arose over temporary custody during the course of the proceedings.

The joint or divided custody ordered here is to be distinguished from alternating custody, where a custody order provides that a child be in the

custody of one parent for certain specified periods and in the custody of another during the alternate periods. We are aware that circuit courts of this State have ordered both types of custody on occasion. Each gives rise to certain problems. Many of the joint custody awards have probably been entered with the agreement of the parties. The courts of review of this State have not had occasion to pass directly upon the propriety of an order which, as here, gives physical custody to one parent but gives the other custodial rights to the two parents jointly. However, under unusual circumstances a joint custodial arrangement between the children's stepmother (their father's widow) and their natural mother was approved in *Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 713.

The custody order in *Cebrzynski* gave the stepmother physical custody with custody to otherwise be exercised by the stepmother and natural mother jointly. The natural mother did not object to the arrangement on the basis that it was cumbersome and not likely to work. Rather, she argued that it deprived her of a *per se* right, as the natural, fit mother, to the complete custody of the children. The appellate court noted the evidence of extremely strong ties between the children and the stepmother with whom they had lived for a substantial period. The appellate court agreed that a separation from the stepmother could have been traumatic. It deemed the welfare of the children to be the overriding issue and held the trial court did not abuse its discretion.

In *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 382 N.E.2d 7, the appellate court reversed an order concerning custody made in August of 1977 because it was a modification of a January 1977 custody order entered without a showing that circumstances had changed since the previous custody order. The January order gave physical custody to the mother, but provided for joint custody between the two parents for other custody rights. The August order transferred the physical custody to the father. In holding that the August order was a modification of the January order, the court criticized the joint custody provision in these words:

> "The court's grant of 'joint custody' in this case was meaningless. Without outlining accommodations for control and care of the children between the parties, the physical possession award here had an effect identical to the taking of the children from the exclusive control of one parent and placing the children in the exclusive control of the other. There was never any attempt by court order to work out details of responsibility between the parties, other than granting the party without the physical custody of the children 'visiting privileges.' The change of physical possession from one parent to the other was not merely the adjustment of custodial arrangements. Practically, the change of physical possession of the children meant that the control and custody of the

children went from one parent to the other." 64 Ill. App. 3d 925, 931, 382 N.E.2d 7, 11.

Our conclusion that joint or divided custody should rarely be awarded is supported by the substantial weight of authority from other jurisdictions. (*Beck v. Beck* (1981), 86 N.J. 480, 432 A.2d 63; *Mastropole v. Mastropole* (1981), 181 N.J. Super. 130, 436 A.2d 955; *In re Marriage of Neal* (1979), 92 Cal. App. 3d 834, 155 Cal. Rptr. 157; *Braiman v. Braiman* (1978), 44 N.Y. 2d 584, 407 N.Y.S.2d 449, 378 N.E.2d 1019; 24 Am. Jur. 2d *Divorce and Separation* sec. 799, at 907 (1966); 27B C.J.S. *Divorce* sec. 308(d), at 446 (1959).) In *Beck* the court approved the divided custody but cautioned that such an award should seldom be made. In the other cited cases, the award was set aside with the courts emphasizing the split authority would likely lead to dispute between the parents unless the parents had a very strong ability to cooperate.

Our decision is consistent with section 608(a) of the Marriage and Dissolution of Marriage Act, which stated at all times pertinent:

"Judicial supervision. (a) Except as otherwise agreed by the parties in writing at the time of the custody judgment, the custodian may determine the child's upbringing, including but not limited to, his education, health care and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would endanger the child's physical health or significantly impair his emotional development." Ill. Rev. Stat. 1979, ch. 40, par. 608(a).

Section 608(a) does not provide for joint or divided custody. Rather it speaks in terms of a single custodian with substantial authority. It also says the parties may agree "in writing at the time of the custody judgment" that a noncustodial parent retain specified rights to determine or participate in the determination of matters concerning the child's upbringing. The willingness of the parties to agree to participation by a noncustodial parent would evidence a likelihood of cooperation. The specificity required of the written agreement would give meaning to the rights of the parent denied physical custody, deemed meaningless in *Carroll* and appearing to be uncertain here. In exigent circumstances, section 608(a) also provides for "specific" limitations upon the authority of the custodial parent in the absence of agreement of the parties. Thus, except in very unusual cases, the first predicate for an order giving any rights traditionally described as custodial in nature to one not having physical custody of a child is an agreement of the parties.

We recognize that joint participation by parents, whose marriage has been dissolved, in making decisions concerning the welfare of the children can strengthen the relationship of the children to the parents.

(Note, *Joint Custody: A Revolution in Child Custody Law?* 20 Washburn L.J. 326 (1981).) However, unless the parents have unusual capacity to cooperate, when the vestige of authority in the parent not having physical custody is not specific, substantial bickering and dispute, damaging to the children and harassing to the parent with physical custody, is likely to result. Section 608(a) was intended to help reconcile the conflicting interests of estranged parents. Ill. Ann. Stat., ch. 40, par. 608(a), Historical and Practice Notes, at 81 (Smith-Hurd 1980).

No more vexing problem faces trial courts than ruling upon matters of child custody. Any solution attempted is likely to have noticeable imperfections. The problems here were typical and the trial court made a conscientious attempt to solve them. Nevertheless, we must hold the provision for petitioner to have a joint general right of nonphysical custody to have been error. Neither the agreement nor the exigent circumstances referred to in section 608(a) existed. The order did not indicate what petitioner's joint custodial authority would be, and the record indicated the parties would not be likely to agree upon the joint exercise of that authority. Both the provisions of section 608(a) and the experience reflected in the precedent from other States indicate that the type of order entered here should be discouraged. On remand, custody should be placed in one person who would have physical custody subject to visitation.

We note that an amendment creating a section 603.1 of the Marriage and Dissolution of Marriage Act recently passed both houses of the General Assembly and at this writing awaits the signature of the governor. (H.B. 2039, 82nd G.A., 1st sess., Senate Amend. No. 3 (1982).) It expressly authorizes joint custody awards when in the best interest of the subject children and upon agreement of the parties. If this provision becomes law, the parties should consider it upon remand and, in any event, the parties should be encouraged to consider the agreement provision of section 608(a).

■■ The custody order must also be reconsidered in respect to the restriction against respondent establishing a residence for the children outside of Sangamon County. The court made this restriction because it felt that respondent would be likely to attempt to move to some place distant enough to discourage petitioner's exercise of his visitation rights. Respondent maintains the restriction deprives her of her constitutional right of travel. (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322.) However, the *Shapiro* court held that a person's right to travel may be restricted if done for the promotion of a compelling governmental interest. Here, the protection of petitioner's rights of visitation would justify a reasonable residential restriction as a condition of respondent's custody of the children.

 The circuit court has broad powers in custody matters. (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831.) These powers include conditioning custody upon a custodian living within a reasonable distance from a noncustodial parent so that visitation may be facilitated. (See *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581; *Martinec v. Sharapata* (1946), 328 Ill. App. 339, 66 N.E.2d 103.) The limitation of the residence to Sangamon County was unreasonably restrictive. On remand, the trial court shall reconsider this question.

We reverse and remand for reconsideration of the question of custody in accordance with the views expressed in this opinion. In doing so, the circuit court may call for the parties to present further evidence on any point it desires.

Reversed and remanded with directions.

WEBBER and MILLS, JJ., concur.