*In re* MARRIAGE OF CLARENCE C. JOHNS, Petitioner-Appellant, and GENEVIEVE JOHNS, Respondent-Appellee.

Second District    No. 2—99—0162

Opinion filed February 10, 2000.

J. Jerry Kane, of Leemon & Kane, of Mt. Carroll, for appellant.

No brief filed for appellee.

JUSTICE THOMAS delivered the opinion of the court:
The petitioner, Clarence C. Johns, appeals from the judgment of

dissolution of his marriage to the respondent, Genevieve Johns, contending that the trial court erred in giving Genevieve a $9,500 credit for property she owned prior to marriage that was later placed in joint tenancy with her husband. We reverse and remand for further proceedings.

The record shows that the parties were married on August 2, 1966, and had their marriage dissolved on January 22, 1999. During the course of their 32-year marriage, no children were born to the parties. At the time of dissolution, Clarence was 96 years old and Genevieve was 83 years old. Both parties retired from their jobs in the mid-1970s, although Clarence continued to work part time.

At the time they were married, Genevieve owned a lot located at 104 Calumet Street, in Savanna, Illinois, which she purchased prior to the marriage. She had constructed a garage on that lot prior to the marriage. Shortly after they were married, the parties constructed a residence on the lot. The parties contributed equally to that endeavor, each paying $7,000 toward the cost of construction. Clarence also paid $2,000 toward Genevieve's car loan with funds he earned prior to the marriage. The parties did not take out a mortgage on the property on which they built their residence, and the construction costs were paid in full by October 1966. Genevieve then placed the title to the entire property, including the lot and the garage, into joint tenancy with her husband. The marital residence was occupied by both parties from the beginning of their marriage until the date of their separation in May 1998, and both parties contributed to the management and upkeep of the property throughout the marriage. Additionally, the real estate taxes on the property were paid from marital funds. The parties also executed wills, each of which left the parties' assets to the surviving spouse. The marital residence located at 104 Calumet Street, including the lot and garage, had an appraised value at the time of dissolution of $58,500.

The trial court found that the total value of the property located at 104 Calumet Street, including the house and the parties' riding lawn mower, was $59,250. The court further found that, excluding the house, the current value of the lot and garage at 104 Calumet Street was $9,500. The court ruled that Genevieve was entitled to "an offset against the current value of the marital residence in the amount of $9,500." The court then awarded the marital residence to Genevieve and ordered her to pay Clarence one-half the value of the property after deducting the $9,500 setoff. The court equally divided the remainder of the parties' assets, which included more than $133,000 in checking and savings accounts.

In his motion to reconsider, Clarence argued that Genevieve should

not be awarded $9,500 for the value of the property that she brought into the marriage. Clarence pointed out that the property was placed in joint tenancy, creating a presumption of a gift to the marital estate. The trial court rejected Clarence's argument by stating, "I think by statute the presumption is that it is to be marital, but I think the court can decline to accept that presumption and I did give her credit for contributing that part of the residence and I will keep that in effect."

On appeal, Clarence argues that the trial court erred in awarding Genevieve $9,500 for contributing the lot and garage to the marriage. Clarence argues that the act of placing Genevieve's nonmarital property in some form of co-ownership raised a presumption that the property became marital and that the presumption was not overcome by the requisite clear and convincing evidence showing that the property was not intended to be a gift to the marital estate. Clarence further argues that the parties' nonmarital contributions to the marriage were roughly equal because he paid $2,000 of his nonmarital funds toward Genevieve's car at the time they were married, while it is doubtful that the value of Genevieve's lot and garage in 1966 exceeded $2,000.

Initially, we note that Genevieve has not filed a brief on appeal. We therefore review this appeal under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).

■ All the property of the parties to a marriage belongs to one of three estates, namely, the estate of the husband, the estate of the wife, or the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993). In order to distribute property upon dissolution of marriage, a trial court must first classify that property as either marital or nonmarital. *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 140 (1996). A trial court's classification of property will not be disturbed unless it is contrary to the manifest weight of the evidence. *In re Marriage of Perlmutter*, 225 Ill. App. 3d 362, 365 (1992).

■ ■ Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503(a) (West 1998)) provides that all property acquired by either spouse during marriage is marital property except for property acquired in certain specified ways, such as by gift or devise. *In re Marriage of Hunter*, 223 Ill. App. 3d 947, 951 (1992). Section 503(b) of the Act provides:

"For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into

some form of co-ownership between the spouses, is presumed to be marital property ***. The presumption of marital property is overcome by showing that the property was acquired by a method listed in subsection (a) of this Section." 750 ILCS 5/503(b) (West 1998).

The placing of the title to nonmarital property in joint tenancy with a spouse raises a presumption that a gift was made to the marital estate and that the property has become marital property. *In re Marriage of Olson*, 96 Ill. 2d 432, 439 (1983). The same presumption also exists where nonmarital property is improved by the addition of marital property. *In re Marriage of Smith*, 86 Ill. 2d 518, 533 (1981). A marital residence owned by both spouses, even if one spouse has furnished all the consideration for it out of nonmarital funds, will be presumed to be marital property absent clear and convincing rebutting evidence. *Hunter*, 223 Ill. App. 3d at 951; *In re Marriage of Flemming*, 143 Ill. App. 3d 592, 596 (1986). The factors used to determine whether the presumption of a gift to the marital estate has been overcome include the making of improvements, the payment of taxes and mortgages, the occupancy of the premises as a home or business, and the extent of control and management of the property. *Hunter*, 223 Ill. App. 3d 947. The party claiming that property is nonmarital has the burden of proof, and any doubts are resolved in favor of finding that the property is marital. *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 141 (1996).

■ Section 503(c)(2) of the Act provides that, when one estate of property makes a contribution to another estate of property, the contributing estate should be reimbursed from the estate receiving the contribution. 750 ILCS 5/503(c)(2) (West 1998). However, reimbursement is not allowed under this subsection for a contribution that was a gift to the other estate. 750 ILCS 5/503(c)(2) (West 1998); *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 779 (1998); *In re Marriage of Durante*, 201 Ill. App. 3d 376, 382 (1990).

■ In the instant case, it was undisputed that the marital residence, including the lot and garage, was placed in some form of co-ownership during the marriage. There was absolutely no evidence offered to rebut the presumption of a gift. Instead, the evidence showed that both parties occupied the property as their residence, the real estate taxes on the property were paid from marital funds, and both parties contributed to the management and upkeep of the premises throughout the marriage. Accordingly, we find that the trial court erred in ruling that it was free to ignore the presumption that the lot and garage were gifts to the marital estate.

Having determined that the lot and garage became marital prop-

erty in this case, we now note that the trial court could consider Genevieve's contribution of the lot and garage in its division of marital assets under section 503(d). See *Smith*, 86 Ill. 2d at 532 (this case relied upon former section 503(c), which was subsequently renumbered as 503(d)). Once property is classified as marital versus nonmarital, section 503(d) of the Act allows the trial court discretion to divide the marital property into just proportions, considering all relevant factors, including statutory factors. *In re Marriage of Zwart*, 245 Ill. App. 3d 567, 572 (1993). Under section 503(d), a spouse's financial contribution to the acquisition of marital assets is only one of several factors that a trial court should weigh in fashioning an equitable distribution of marital assets. 750 ILCS 5/503(d) (West 1998); *In re Marriage of Lee*, 246 Ill. App. 3d 628, 638 (1993).

In the present case, the trial court was confused about the presumption requiring that the lot and garage be classified as marital property. Because of the trial judge's confusion on this point, it is unclear whether the trial court decided to award Genevieve an offset for the garage and lot because of an appropriate consideration of Genevieve's contribution to the acquisition of marital property as one of several factors to be considered under section 503(d) in dividing marital property, or whether the court inappropriately decided to award Genevieve an offset based on the mistaken belief that a portion of property in question was nonmarital in nature. Accordingly, we remand the cause for reconsideration of the property division in light of the principles enunciated in this opinion.

For the foregoing reasons, we reverse the property division of the circuit court of Carroll County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

HUTCHINSON and GALASSO, JJ., concur.