NO. 4-01-0924

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of ) Appeal from

DAVID L. MEANS, ) Circuit Court of

Petitioner-Appellee, ) Sangamon County

and ) No. 00D399

LORI S. MEANS, )

Respondent-Appellant. ) Honorable

) Steven H. Nardulli,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Respondent, Lori S. Means (Lori), appeals the order of the trial court denying her motion to modify the visitation of petitioner, David L. Means (Dave), so as to accommodate her move to McHenry, Illinois.  We conclude that the joint-parenting agreement executed by the parties did not restrict the right of the primary physical custodian to move inside the State of Illinois.  Accordingly, we reverse and remand.     

Lori and Dave were married May 5, 1990, in Sangamon County.  They have two children, a son Michael, born January 8, 1991, and a son Matthew, born February 1, 1995.  A judgment of dissolution of marriage was entered September 6, 2000.  The judgment incorporated a joint-parenting agreement, and the parties were awarded joint custody of their children, with Lori having primary physical custody.  The agreement provided that "the parties shall jointly decide all major issues concerning the children's education, religious training, and extraordinary health care."  In the event the parties were unable to agree on any issue requiring a joint decision, they agreed to enter into mediation.   

On March 27, 2001, a mediator's report was filed with the court, stating that mediation had been terminated because after an initial assessment it was determined there was no realistic likelihood that a mediated agreement as to the disputed child custody/child visitation issues could be achieved.  On April 3, 2001, Lori filed a "Motion to Modify Visitation," reciting that she was originally from McHenry, Illinois, and that she desired to relocate there with the children.  On April 11, 2001, Dave filed a "Petition to Modify Judgment of Dissolution of Marriage," seeking an increase in his periods of physical custody. 

On July 2, 2001, the trial court entered an order determining that "Lori has not met her burden to establish that a modification of the custodial schedule is in the children's best interests."  The trial court denied Dave's petition, except that each party was allowed to have the children on the party's birthday, a Christmas custody schedule was set, and Thanksgiving was declared to be a four-day holiday.  The court found that Dave had overnight custody on alternate weekends and holidays and two weeks during the summer; that a practice had developed of Dave keeping the boys overnight on Tuesday and Thursday although that practice was suspended by agreement in April 2001; and that Dave spent other time with the boys and "spends nearly as much time with the boys as does Lori."  The court, applying an analysis similar to that found in the leave-to-remove provisions of section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609 (West 2000)), determined that McHenry County is a 3 1/2-hour drive from Springfield and that Lori's financial circumstances would be improved only slightly, if at all.  See 
In re Marriage of Eckert
, 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045-46 (1988) (identifying factors to be considered under section 609).  After her motion to modify visitation was denied, Lori timely filed a notice of appeal.

On appeal, Lori argues that "[i]t is not necessary for a custodial parent, or a parent with the primary physical custody of a child, to obtain permission from a court before moving to another location in Illinois."  
In re Marriage of Wycoff
, 266 Ill. App. 3d 408, 416, 639 N.E.2d 897, 904 (1994).  It is true that section 609, requiring leave to remove, does not apply to intrastate transfers.  
Wycoff
, however, was a case where joint custody had been terminated and the question before us was whether the question of custody should be addressed under section 602, dealing with initial awards of custody, or under section 610, dealing with modification of custody awards, and whether the former primary physical custodian should have any preference in receiving custody.  
Wycoff
 did not address the issue presented in this case, whether the parties may enter into a joint-parenting agreement which restricts the right of the primary physical custodian to move within the state and whether the agreement here incorporated such a restriction.

This case involves an issue of statutory construction and our review is 
de
 
novo
.  
In re Marriage of Kates
, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001). 

A joint-parenting agreement may properly deal with "each parent's powers, rights and responsibilities for the personal care of the child and for major decisions such as education, health care, and religious training."  750 ILCS 5/602.1(b) (West 2000).  There are limits, however, to what the parties may agree to.  Even though child support may have an effect on education, health care, or religious training, modification of a child support obligation is a judicial function.  A joint-custody agreement or order cannot supersede or modify any of the child support sections of the Act.  
In re Marriage of Grabarek
, 175 Ill. App. 3d 1045, 1048, 530 N.E.2d 680, 682 (1988).  Petitions to remove a child from Illinois are governed by section 609 of the Act, despite any provisions in a joint- parenting agreement purporting to limit the right of removal.  
In re Marriage of Yndestad
, 232 Ill. App. 3d 1, 7, 597 N.E.2d 215, 219 (1992).  The converse is probably not true; the parties could agree that the primary physical custodian could remove the child from the state without seeking judicial permission to do so.

Section 602.1(b) lists three examples of major decisions concerning the child which may be dealt with in the joint- parenting agreement: education, health care, and religious training.  750 ILCS 5/602.1(b) (West 2000).  The list is not exclusive, but without specific language in the agreement it is unlikely an agreement will be extended outside those areas.  The remarriage of either parent may have a profound effect on the children, but it is unlikely the courts would ever construe a joint-parenting agreement to require mediation and court review of a parent's decision to remarry.  (Dave has remarried and suggests in his brief that Lori wants to move to McHenry because she has met a gentleman from that area.)  The same is true of a parent's decision to take a better job, which may reduce the time which the parent spends with the children, or a parent's decision to change religions, which of course may affect the children's religious training.  

The parties may address the question where the children will reside, both in sole-custody agreements and in joint-custody agreements.  Parental agreements or court orders may impose reasonable limitations upon the custodian's choice of residences.  
In re Marriage of Manuele
, 107 Ill. App. 3d 1090, 1096, 438 N.E.2d 691, 695 (1982) (limitation to Sangamon County unreasonably restrictive).  "Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, the custodian may determine the child's upbringing ***."  750 ILCS 5/608(a) (West 2000).  Two aspects of that language are significant in this case:  (1) the custodian has broad power to determine the child's upbringing, including the residence of the child; and (2) the parties may agree otherwise or the court may order otherwise.    

The joint-parenting agreement in 
In re Marriage of Findlay
, 296 Ill. App. 3d 656, 657, 695 N.E.2d 548, 549 (1998), contained broad language, that "'[t]he parties will jointly decide matters of substance regarding the children, including, without limitation intended, important questions of education, religion, and elective medical care.'"  
The trial court in 
Findlay
 dismissed a complaint for injunction seeking to prevent an in-state move, concluding as a matter of law that it had no jurisdiction to prevent the move.  The appellate court reversed, concluding that the quoted language was ambiguous, and the proposed move could be construed to be "a matter of substance regarding the children," triggering the provisions requiring mediation and if that were not successful, resolution by the court.  The cause was remanded to determine whether the parties intended to address intrastate moves in their agreement.  See also 
In re Marriage of McGillicuddy
, 315 Ill. App. 3d 939, 942, 735 N.E.2d 1028, 1031 (2000) (agreement specifically required reconsideration of residential parent if residential parent moved from McDonough County).  

The 
Findlay
 court noted, however, there was a strong argument against interpreting the agreement to cover intrastate moves.

"Unlike decisions about the children's educa-

tion or medical care, petitioner's relocation 

directly involves her own career and lifestyle.  

Although the parties could easily have addressed 

this contingency directly, the agreement does 

not explicitly override the established pre-

sumptions that a custodial parent need not 

seek the court's permission to move intra-

state and that '"[c]ustodial parents should 

not be expected to give up careers for the 

sake of remaining in the same geographical 

location."'  [Citation.]."  
Findlay
, 296 Ill. 

App. 3d at 660, 695 N.E.2d at 551.  

The language of the joint-parenting agreement in the present case is more limited than the language in 
Findlay
.  In the present case the "major issues" to be "jointly decided" are limited to those "concerning the children's education, religious training[,] and extraordinary health care."  Education, religion, and medical care were mentioned in 
Findlay
, but those specific references were to be "'without limitation intended.'"  
Findlay
, 296 Ill. App. 3d at 657, 695 N.E.2d at 549.  Beyond that, the parties were to jointly decide all "'matters of substance regarding the children.'"  
Findlay
, 296 Ill. App. 3d at 657, 695 N.E.2d at 549.  

The trial court found that although Dave did not have much overnight visitation, he "spends nearly as much time with the boys as does Lori."  In 
Wycoff
, we suggested that the legislative presumptions 
in favor of stability and the present custodian might not apply in those unusual cases where the child spends approximately equal time with each parent.  
Wycoff
, 266 Ill. App. 3d at 411, 639 N.E.2d at 901.  If there are two primary physical custodians, it will not be possible to give one of them a preference.  It would be unusual, however, for the presumption not to apply.  Section 610 (which strongly favors stability and the present custodian) by its specific terms applies to joint- custody cases.  750 ILCS 5/610(b) (West 2000).  The joint-parenting agreement here designated Lori as the primary physical custodian.  For the most part, Lori, not Dave, had the children overnight.  Even in some-sole custody cases, the parents spend approximately the same amount of time with the children.  We conclude that the fact that Dave spends nearly as much time with the boys as does Lori does not prevent the application of the presumption
 
that continuation of the existing custodian is in the best interests of the child.          

We conclude that the language in this joint-parenting agreement did not affect the general rule, expressed in section 602, that the custodian of a child may move anywhere in the State of Illinois without seeking the permission of the court.  The trial court in this case erred in refusing to modify visitation in order to accommodate Lori's move.  

Reversed and remanded.              

MYERSCOUGH and KNECHT, JJ., concur.