*In re* MARRIAGE OF KIMBERLY J. SEITZINGER, Petitioner-Appellant, and ROGER E. SEITZINGER, Respondent-Appellee.

Fourth District    No. 4—01—0743

Opinion filed August 23, 2002.

William D. Reid, of Elmore & Reid, of Springfield, for appellant.

Nolan Lipsky, of Petersburg, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In June 2001, the trial court granted petitioner, Kimberly Seitzinger, and respondent, Roger Seitzinger, a dissolution of marriage. The trial court awarded the parties joint custody of their only child, Sabrina (born October 18, 1996), with Kimberly to have primary physical custody provided she remained in either Sangamon or Cass County. The trial court established a visitation schedule for Roger, ordered him to pay $292.68 per month in child support and half of the daycare costs. The court divided the parties' personal property between them and ordered them to split equally the costs of their former marital residence until it was sold; it ordered Roger to pay Kimberly for health insurance she previously provided Sabrina, and ordered Kimberly to maintain further health insurance.

Kimberly appeals the award of joint custody, the provision that she remain in Sangamon or Cass County, the visitation schedule, the division of property, and the failure of the trial court to order Roger to pay one half of Sabrina's health insurance premiums. We affirm in part as modified, reverse in part, and remand with directions.

## I. BACKGROUND

On October 27, 2000, Kimberly filed a petition for dissolution of marriage pursuant to the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 *et seq.* (West 2000)). Kimberly sought sole custody of their only child, Sabrina. Both parties filed petitions for temporary custody and support. On November 1, 2000, the trial court entered a temporary agreed order whereby the parties agreed to split time with Sabrina equally. Each party would decide where Sabrina would go to day care while in that party's care. The parties were to decide on a specific schedule.

Roger and Kimberly agreed Kimberly would have custody of Sabrina on Monday and Tuesday, Roger on Wednesday and Thursday, and they would alternate Friday through Sunday. They came to this arrangement without further court input. This schedule remained in effect until the permanent custody determination was made by the trial court on March 21, 2001. By the time the court began hearing evidence on custody on January 16, 2001, however, both parties concluded the temporary schedule was not in Sabrina's best interest and both sought sole custody.

Roger is a schoolteacher and basketball coach in Ashland, Illinois. The family moved to the Springfield area for Roger to take this job in August 2000. Previously, Roger held a similar position in Fairfield, Illinois, as he had throughout the parties' marriage. Kimberly is a licensed speech pathologist at Memorial Medical Center in Springfield. She previously worked for health-care providers while the parties resided in Fairfield. Sabrina has been in day care while the parties are at work throughout their marriage.

Roger works during the school year and has the summers off. He previously cared for Sabrina during the summers and school vacations instead of her attending day care. Kimberly works Monday through Friday from 8 a.m. to 4:30 p.m. She also works one Saturday every two months, and when she does so, she has the following Monday off.

While in Kimberly's care, Sabrina attended day care at Memorial Medical Center. Kimberly frequently ate lunch with Sabrina there. While in Roger's care, Sabrina attended day care at Noah's Ark Christian Preschool and Day Care in Ashland. Roger is a member of the board of directors of the day care and attends the church that runs the day care. He occasionally ate lunch with or visited Sabrina at the day care. Both daycare centers provided a good environment for Sabrina and neither party had any criticisms of the other's day-care choice.

Kimberly arranged for Sabrina to attend counseling due to the separation of the family. Roger cooperated in getting Sabrina to the counseling sessions when he had custody, and the parties agreed to split the costs of counseling.

Both parties presented witnesses stating both Kimberly and Roger were good parents and could care for Sabrina appropriately. Only minor criticisms were raised. Neither party suggested the other party was not a proper parent.

Kimberly testified she would like to move back to Fairfield because she had friends there and Sabrina could attend her old day care. Kimberly thought she had job opportunities in Fairfield and she was willing to buy the parties' home there which, while listed for sale, had not been sold. However, she stated she would not move to Fairfield if it would jeopardize her receiving custody of Sabrina. Roger stated he intended to stay in Ashland.

Though both parties sought sole custody, the trial court awarded joint custody, finding "the parties exhibited an ability to communicate with each other regarding the interest of their child." The court further found both parties had healthy and suitable environments to care for Sabrina and had cultivated familial contacts to assist them. While the court found this case to be an appropriate situation for joint

custody, the court did not believe it was in the best interest of Sabrina to divide physical custody. The court awarded primary physical custody to Kimberly so long as she remained in Sangamon or adjacent Cass County (where Ashland is located). If she elected to move from either of those counties, primary physical custody was to change to Roger. If Roger moved from either of those counties and Kimberly remained there, Kimberly was to have sole custody of Sabrina.

Roger received visitation on Wednesday evenings, two consecutive weekends from 5 p.m. on Friday to 6 p.m. on Sunday, plus certain holidays and school breaks and four weeks in the summer. Kimberly would have weekends with Sabrina every third week. Roger was to have decision-making authority over Sabrina's education and Kimberly was to have decision-making authority over Sabrina's religious development.

The trial court divided the personal property of the parties as they requested except it gave some additional items to Roger upon his request in his posthearing memorandum. (These items were not considered by either party at the time of the hearing.) The court ordered Roger to pay Kimberly $1,952.01 within 60 days to equalize the division of property. The court ordered Roger to pay child support of $292.68 per month, pay half of Sabrina's day-care costs, and reimburse Kimberly $455 for health insurance she previously provided Sabrina. The court ordered Kimberly to provide health insurance for Sabrina and the parties to equally divide health-care costs not covered by insurance.

Both parties filed motions for reconsideration. Kimberly asked that the joint custody, visitation, and the division of personal property determinations be reconsidered and that Roger be ordered to pay half the cost of Sabrina's health insurance. Roger asked the primary custodian, summer visitation, and costs of day-care decisions be reconsidered. The trial court granted the portion of Kimberly's motion requesting Roger's summer visitation be divided into two 14-day periods, with Kimberly to have Sabrina for at least one week in between those periods. The remainder of both parties' motions to reconsider were denied. This appeal followed.

## II. ANALYSIS

### A. Joint Custody

Kimberly first argues the trial court erred in awarding joint custody. She contends the court should have awarded her sole custody of Sabrina because the parties cannot cooperate with respect to raising Sabrina jointly.

■ "In determining custody, the trial court should consider all

relevant factors, including those listed in section 602 of the [Dissolution] Act [(750 ILCS 5/602 (West 2000))], and decide what custodial order serves the best interest of the child." *In re Marriage of Dobey*, 258 Ill. App. 3d 874, 876, 629 N.E.2d 812, 814 (1994). In cases regarding custody, a strong presumption favors the result reached by the trial court and the court is vested with great discretion due to its superior opportunity to observe and evaluate witnesses when determining the best interests of the child. *Dobey*, 258 Ill. App. 3d at 876, 629 N.E.2d at 814. Therefore, the trial court's ruling will not be disturbed unless it is against the manifest weight of the evidence or is an abuse of discretion. *Dobey*, 258 Ill. App. 3d at 876, 629 N.E.2d at 814.

■ Section 602.1(c) of the Dissolution Act provides:

"The court may enter an order of joint custody if it determines that joint custody would be in the best interests of the child, taking into account the following:

(1) the ability of the parents to cooperate effectively and consistently in matters that directly affect the joint parenting of the child. ***

(2) [t]he residential circumstances of each parent; and

(3) all other factors which may be relevant to the best interest of the child." 750 ILCS 5/602.1(c) (West 2000).

Thus, the standards for an award of joint custody are the best interests of the child, the agreement of the parents and their mutual ability to cooperate, the geographic distance between parents, the desires of the child if he/she is of suitable age, and the relationships previously established between child and parents. *In re Marriage of Drummond*, 156 Ill. App. 3d 672, 679, 509 N.E.2d 707, 712 (1987).

Joint custody should be awarded only where the evidence indicates the parents are willing to cooperate in the upbringing of their child. *In re Marriage of Marcello*, 247 Ill. App. 3d 304, 310, 617 N.E.2d 289, 293 (1993). This court has set aside joint custody orders where the evidence showed the parents had too much animosity toward each other to be able to cooperate. *In re Marriage of Bush*, 191 Ill. App. 3d 249, 263, 547 N.E.2d 590, 598 (1989); *Drummond*, 156 Ill. App. 3d at 680-82, 509 N.E.2d at 713-14. However, where the evidence showed the parents were loving and capable and were sufficiently able to cooperate, an award of joint custody may be affirmed even if neither party requested it. *In re Marriage of Hacker*, 239 Ill. App. 3d 658, 661, 606 N.E.2d 648, 650-51 (1992).

Kimberly argues the parties could not cooperate with respect to raising Sabrina. As examples, she argues the parties could not agree on day care or preschool pending the outcome of the case, the parties

held separate religious beliefs, Roger was not good about giving Sabrina her medicine, and the parties simply could not cooperate. She argues conflicts are inevitable where the court's order provided Roger with decision-making authority for Sabrina's schooling but gave Kimberly decision-making authority on religious upbringing. Kimberly contends she could not then raise Sabrina in a religious educational setting of her choice since Roger had decision-making authority over schooling.

Evidence on cooperation was to the contrary. The parties were able to agree to the basis of the temporary relief order in November 2000, which provided a 50-50 split in each party's time with Sabrina. This order remained in effect until the court made its custody determination on March 21, 2001. The parties agreed on a specific custody schedule and apparently abided by the schedule.

The parties cooperated on counseling for Sabrina. They did not dispute the other was a good parent. Neither voiced substantial criticisms of the quality of care provided by the other. Both parties agreed in the temporary order they would each decide on a day-care provider while Sabrina was with them. Presumably they each chose a day care that worked best for them when going to work in the morning. Kimberly had no criticisms of the day care where Roger enrolled Sabrina.

While Kimberly asserted the parties could not cooperate, no evidence in the record shows any specific instances of lack of cooperation. As part of the dissolution proceedings, both parties signed a joint-parenting agreement to implement the court's joint custody order.

Joint custody means joint responsibility and not shared physical custody. It is simply a tool to maximize the involvement of both parents in the life of a child. In this case, both parents had a great deal of involvement in Sabrina's life during their marriage and both desired to continue with their involvement as both sought sole custody. Ample evidence showed the parties' ability to cooperate. Therefore, the trial court did not abuse its discretion in awarding joint custody; neither was its decision against the manifest weight of the evidence.

■ No evidence showed the parties actually had different religious beliefs. The evidence indicated during their marriage the parties both attended the Christian Church. No evidence showed either party attended a different church after they separated. Roger was unlikely to object to Kimberly placing Sabrina in a religious educational setting and he had, in fact, enrolled Sabrina in a preschool run by the church he was then attending and which provided religious training as part of its curriculum. Kimberly apparently had no objection. At the same

time, we believe joint parenting should require the parties to discuss important issues and make joint decisions. Thus, we conclude the parties should share the decision on schooling and religion; we affirm the custody award as modified to reflect this shared decision making.

## B. Conditional Primary Physical Custody

■ Although we agree with the trial court this is an appropriate case for joint custody, we disagree about conditioning Kimberly's primary physical custody on her remaining in Sangamon or Cass County.

It is not necessary for a custodial parent or a parent with primary physical custody to obtain permission from a court before moving to another location in Illinois. *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 416, 639 N.E.2d 897, 904 (1994). Thus, once she has been awarded primary physical custody of Sabrina, Kimberly may move within the State of Illinois with impunity. However, parental agreements or court orders may impose reasonable limitations on a custodian's choice of residence. Section 608(a) provides:

> "Except as otherwise agreed by the parties in writing at the time of the custody judgment or as *otherwise ordered by the court*, the custodian may determine the child's upbringing ***." (Emphasis added.) 750 ILCS 5/608(a) (West 2000).

As we recently noted in *In re Marriage of Means*, 329 Ill. App. 3d 392, 395, 771 N.E.2d 501, 504 (2002), two aspects of this language are significant: (1) the custodian has broad power to determine the child's upbringing, including residence; and (2) the parties may agree otherwise or the court may order otherwise.

The joint-parenting agreement in this case did not place a restriction on Kimberly's residence, but the trial court did so in its order. A trial court has broad powers in custody matters, including conditioning custody upon a custodian living within a *reasonable* distance from the noncustodial parent so visitation may be facilitated. *In re Marriage of Manuele*, 107 Ill. App. 3d 1090, 1096, 438 N.E.2d 691, 695 (1982). The trial court in *Manuele* conditioned physical custody under an award of joint custody upon the children continuing to "reside in the Springfield" area, which was defined in the custody order as being within Sangamon County. *Manuele*, 107 Ill. App. 3d at 1092, 438 N.E.2d at 692. On appeal, we found the limitation of residence to Sangamon County to be unreasonably restrictive. *Manuele*, 107 Ill. App. 3d at 1096, 438 N.E.2d at 695.

Here, the restriction of Kimberly's residence to Sangamon or Cass County is arbitrary if the purpose of the restriction is ease of visitation. Geographical location is not, *per se*, determinative of ease of visitation. Ease of transportation may be just as important. Other

counties located near Roger's home in Ashland might prove just as easy to get to as would a location in the farthest corner of Sangamon or Cass County.

More important, however, the trial court erroneously conditioned not only Kimberly's primary physical custody of Sabrina on her remaining in Sangamon or Cass County but also the continuation of joint custody. The trial court's order, as to both parties, was contingent solely on geography because joint custody terminated upon Roger's or Kimberly's removal from Sangamon or Cass County. The custody status of a minor child should not change *automatically* with the removal of a parent from his or her present location. Instead, the best interests of the child should be considered when a change of custody is anticipated.

Section 610 of the Dissolution Act provides for the modification of joint custody judgments upon a finding by clear and convincing evidence of facts that have arisen since the prior judgment, that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. 750 ILCS 5/610(b) (West 2000). Even the move out of state of the parent having primary physical custody under a joint parenting order, while obviously a change of circumstances, does not necessarily provide grounds for termination of a joint parenting order, or the change of one primary custodian for the other, if it is not in the best interest of the child. *In re Marriage of Good*, 208 Ill. App. 3d 775, 778, 566 N.E.2d 1001, 1002-03 (1991).

Joint parenting is a tool to maximize the participation and responsibility of both parents in a child's life. It need not be automatically terminated upon the removal of one parent from close geographical proximity from the other. Thus, we find that portion of the trial court's order *automatically* changing the primary physical custodian or terminating the joint parenting order upon the removal of either parent from Sangamon or Cass County, without consideration of the best interests of Sabrina, to be an abuse of discretion, and we reverse that condition.

## C. Visitation

We next review the trial court's visitation order. The trial court gave Roger visitation from 5 p.m. on Friday to 6 p.m. on Sunday for two consecutive weekends with Kimberly to have the care of Sabrina every third weekend. Kimberly argues giving Roger visitation with Sabrina two out of every three weekends is an abuse of discretion. She contends that while she has Sabrina during the weekdays every week, this time includes all the duties that come with a workweek, *i.e.*,

homework, school drop off, work schedule, *et cetera*, without the benefit of the "fun" with Sabrina on nonhectic weekends. Kimberly contends Roger should receive visitation only every other weekend.

A trial court has broad discretion in determining the visitation rights of a nonresidential parent with the best interest of the child being of primary concern. A visitation plan should not be reversed absent a finding the ordered visitation is manifestly unjust. *Dobey*, 258 Ill. App. 3d at 877, 629 N.E.2d at 815. The policy of this state is to grant liberal visitation rights. *In re Marriage of Brophy*, 96 Ill. App. 3d 1108, 1112, 421 N.E.2d 1308, 1311 (1981). The best interest of the child is normally fostered by continuing a healthy and close relationship with the noncustodial parent. *Brophy*, 96 Ill. App. 3d at 1112, 421 N.E.2d at 1311.

In this case, both Roger and Kimberly had a close relationship with Sabrina. The visitation schedule would serve to foster the relationship between Roger and Sabrina. We assume Roger will be required to feed and bathe Sabrina during visitation as well as launder her clothing, pick up toys, and attend to her needs. There was also evidence Sabrina had a close relationship with her paternal grandparents and the extra weekends provided to Roger would enable Sabrina to keep that relationship strong. The trial court's visitation schedule is not manifestly unjust or an abuse of discretion.

## D. Division of Personal Property

■ Kimberly contends the trial court should have divided the parties' personal property pursuant to the agreement they reached as presented to the court in Kimberly's memorandum based on her trial exhibits. Roger admits he added several items to be divided in his memorandum *after* evidence was heard, with no opportunity for Kimberly to respond.

A trial court's distribution of property should not be reversed absent an abuse of discretion. *In re Marriage of Kerber*, 215 Ill. App. 3d 248, 254, 574 N.E.2d 830, 834 (1991).

While Kimberly argues the trial court should have divided the personal property as presented to it in court, she does not state she disagreed with Roger's requests or state she should have received more of the property; nor does she claim the property added was of any great value. The items Roger added after trial were a full-size bed and a 35-millimeter camera, both of which he requested and was awarded; a video camera, which the trial court gave to Kimberly; and two items that Roger claimed were nonmarital, a television stand given to him by his mother and a quilt made for Sabrina by his aunt, both of which the court awarded him. Kimberly received all of the

items she requested from the trial court except a refrigerator plus the video camera Roger added after trial. We find no abuse of discretion under these circumstances.

## E. Health Insurance

■ While the trial court ordered Roger to reimburse Kimberly for health insurance she previously provided for Sabrina, it did not order Roger to contribute to future insurance but, instead, ordered Kimberly to provide the insurance. She asks that he contribute half the cost.

The duty to provide health insurance is an integral part of a parent's current and future support obligations. *Franson v. Micelli*, 172 Ill. 2d 352, 356, 666 N.E.2d 1188, 1189 (1996). The affidavit Roger filed with the trial court reflected his employment and the availability of health insurance through his employer. When such insurance is available, the noncustodial parent is required under section 505.2(b) of the Dissolution Act (750 ILCS 5/505.2(b) (West 2000)) to provide contribution upon the request of the child-support obligee. *In re Marriage of Self*, 265 Ill. App. 3d 804, 805-06, 638 N.E.2d 699, 700 (1994). Thus, the trial court should have ordered Roger to contribute half the cost of health insurance for Sabrina.

Roger agrees he should be required to contribute half the cost of health insurance for Sabrina, but contends the trial court should then reconsider the amounts he is required to pay in child support and contributions for day-care costs. We do not find this to be necessary, however, as the child support he was ordered to pay follows the statutory guidelines in section 505 of the Dissolution Act (750 ILCS 5/505(a)(1) (West 2000)). The joint custody he enjoys with Kimberly means joint obligations as well as joint benefits. He is just as responsible for day-care and health insurance costs now as he was when the parties were married.

## III. CONCLUSION

We affirm the court's visitation schedule and the division of personal property. We affirm the trial court's award of joint custody as modified: (1) the parties share decision-making authority as to schooling or religion; and (2) Roger must contribute half the costs of health insurance for Sabrina. We reverse the restrictions on the geographical locations of either parent in the trial court's order. We remand with directions to issue an amended judgment of dissolution consistent with this opinion.

Affirmed in part as modified and reversed in part; cause remanded with directions.

MYERSCOUGH and TURNER, JJ., concur.