No. 3-04-0517

_____

filed June 9, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

_____

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| ROD SAMARDZIJA, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
|     Petitioner-Appellee, | ) | |
| | ) | No. 02-D-371 |
|     and | ) | |
| | ) | |
| LILLY SAMARDZIJA, | ) | Honorable |
| | ) | Robert J. Baron, |
|     Respondent-Appellant. | )Judge, Presiding. | |

_____

JUSTICE SLATER delivered the opinion of the court:

_____

The marriage of petitioner Rod Samardzija and respondent Lilly Samardzija was dissolved on February 27, 2004. Respondent raises various issues on appeal concerning the distribution of the parties' property, the timing and permanency of maintenance, payment of attorney fees and credit card debt, and the propriety of a geographic limitation imposed by the trial court. We affirm in part and reverse in part and remand.

Facts

To avoid repetition, we will initially present only a brief overview of the facts. Additional testimony and other evidence will be set forth as necessary in the context of resolving particular issues.

The parties were married on September 8, 1996, and during most of the marriage they resided in Orland Park, Illinois. Two children were born during the marriage: Tanja, born June 18, 1997, and Maya, born January 7, 2000. Respondent has a certificate as a lab technician from a community college in Yugoslavia. She worked for 10 months in an oncology laboratory in Belgrade, analyzing blood samples. After immigrating to the United States in 1992, she worked for two physicians in Ohio. Respondent then worked for a modeling management agency for 10 months. After getting married respondent worked in the jewelry department at Marshall Field's during the Christmas season. She did no other work during the marriage because her husband wanted her to stay at home and raise their children. Respondent was 35 years old at the time the dissolution judgment was entered.

Petitioner is president of Gremp Steel Company, a corporation owned primarily by petitioner and other family members. Petitioner owns 25% of the company's shares, which were received from his parents. The company regularly paid "profit bonuses" to shareholders. The company loaned petitioner $112,000, which was used in building a home for the couple in Orland Park. Petitioner repaid the loan by returning the bonuses he was given. According to Norman Diamond, the accountant for Gremp Steel, the bonuses were paid to petitioner because he was a stockholder, not because of his employment. Petitioner's salary was set annually by the board of directors, which consists of petitioner, his mother, his brother, his uncle, and Norman Diamond. The trial court found that petitioner's average annual salary was $160,000. Petitioner was 44 years old at the time the marriage was dissolved.

2

The primary marital asset was the Orland Park residence, which the parties began building after they were married and which was completed in September of 1998. The home, which was titled in petitioner's name only, was built on a lot purchased by petitioner prior to the marriage. The lot was valued at $61,000 and the home was valued at $360,000 by petitioner's appraiser, as of the date of completion. The appraised value as of June, 2003, was $445,000. Petitioner testified that he received $125,000 from the sale of his house in South Holland in December of 1997. He put $50,000 in a certificate of deposit and $75,000 in a joint account, which was then used to build the Orland Park home. That money, plus the $112,000 petitioner borrowed from Gremp, constituted the majority of the funds used to build the home, which cost nearly $300,000. The indebtedness was repaid by returning petitioner's profit bonuses to Gremp, plus payments of $500 made from petitioner's paycheck.

The trial court divided the marital estate as follows:

Petitioner:

| | | |
|---|---|---|
| 1/2 of the First Midwest checking account | $3,300 | |
| Cash surrender value of the ING life insurance policy | $14,000 | |
| 1/2 half of the marital portion of the Gremp Steel retirement account | $29,600 | |
| | | $46,900 |

Respondent:

| | | |
|---|---|---|
| Bank One checking account | | $500 |
| 1/2 of First Midwest checking account | $3,300 | |

3

| | |
|---|---|
| 1/2 of Gremp Steel retirement account | $29,600 |
| Honda Minivan | $18,000 |
| | $51,400 |

The court also found that the Orland Park home was petitioner's non-marital property, but ruled that $140,000 of marital funds should be reimbursed to the marital estate. Those funds were distributed to respondent in the amount of $100,000, while petitioner received $40,000. Each party was made responsible for their own attorney fees and debts, including $38,000 in credit card debt accumulated by respondent since the parties had separated. Petitioner received non-marital property, not including the Orland Park house, valued at $417,000.

In addition to the above, the trial court ordered petitioner to pay 28% of his income as child support, a monthly payment of $2,517. Petitioner was also ordered to pay respondent $2,000 per month in rehabilitative maintenance for a period of 36 months.

Analysis

Respondent first contends that the trial court erred in classifying the Orland Park home as non-marital. Respondent argues that the use of some non-marital funds to build the home did not overcome the presumption that it was marital property. We agree.

Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/503(a) (West 2004)) provides that all property acquired by either spouse during marriage is marital property unless it was acquired in certain specified ways, such as by gift or devise. Section 503(b)(1) creates a presumption that property

4

acquired during marriage is marital, regardless of how title is held. In addition, section 503(c)(1) states that "if marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estate, the commingled property shall be deemed transmuted to marital property." 750 ILCS 5/503(c)(1) (West 2004). The trial court's classification of property as marital or non-marital will not be disturbed unless it is against the manifest weight of the evidence. In re Marriage of Johns, 311 Ill. App. 3d 699, 724 N.E.2d 1045 (2000).

In this case the trial court found that the home "was not transmuted" and "remain[ed]" non-marital property, although the court also ordered $140,000 to be contributed back to the marital estate. It appears that the court believed that because the house was titled in petitioner's name, and because he contributed a substantial amount of non-marital funds towards the cost of building the house, it was presumptively non-marital. However, the presumption that property acquired during the marriage is marital applies "regardless of whether title is held individually or by the spouses in some form of co-ownership." 750 ILCS 5/503(b)(1) (West 2004); see In re Marriage of Ohrt, 154 Ill. App. 3d 738, 507 N.E.2d 160 (1987) (finding home was marital despite fact that husband's name alone was on title). Moreover, "[a] marital residence owned by both spouses, even if one spouse has furnished all the consideration for it out of non-marital funds, will be presumed to be marital property absent clear and convincing rebutting evidence." Marriage of Johns, 311 Ill. App. 3d at 703, 724 N.E.2d at 1048.

Accordingly, we find that the Orland Park home, built by the parties during the marriage, was presumptively marital property. Although petitioner contributed non-

5

marital funds towards the home's construction, as well as the lot on which it was built, marital funds from petitioner's paychecks were used to partially satisfy the loan from Gremp Steel.  Under the circumstances, the presumption of marital property has not been overcome.  We therefore reverse the trial court's finding that the home was non-marital.  We remand for recalculation of the home's value and for determination by the court regarding any credit due for contributions of non-marital funds.  We note that on remand the trial court is not bound by its original proportions in distributing the equity in the marital home.  We also reject respondent's argument that, because she has custody of the parties' children, the trial court abused it's discretion in not awarding her the marital home.  Although it is desirable to keep children in the family home for the stability it affords, that factor may be outweighed by the need to give the parties sufficient income with which to rebuild their lives.  In re Marriage of Clabault, 249 Ill. App. 3d 641, 619 N.E.2d 163 (1993).  The Orland Park home was, by far, the primary asset of the marital estate.  Awarding it to respondent would potentially have required respondent to reimburse a substantial amount to petitioner's non-marital estate, a seemingly unrealistic proposition.  We find no abuse of discretion.

Respondent next contends that the profit bonuses which petitioner loaned back to Gremp Steel were a marital asset which should have been included in the division of marital property.  We disagree.  Norman Diamond, the accountant for Gremp Steel, testified that the shareholders, including petitioner, would sometimes receive "profit bonuses" which they would then loan back to the company.  According to Diamond, the bonuses were only given to stockholders and were not based on employment.  Since it is undisputed that the Gremp Steel stock was a gift from petitioner's parents, it was non-

6

marital property, as was the income, or "bonuses" flowing from that property. See ILCS 5/503(a)(1),(8) (West 2004) (income from property acquired by gift is non-marital property). In addition, Diamond testified that he did not believe that petitioner had ever put any money into the company other than loaning back the profit bonuses and dividends. Respondent mistakenly relies on In re Marriage of Schneider, 214 Ill. 2d 152, 824 N.E.2d 177 (2005), in which the court held that accounts receivable should be included in determining the value of a dental practice. The issue in Schneider was the proper valuation of a marital asset, not the effect of loans by a spouse of non-marital funds to a non-marital asset. We find no error.

Respondent next asserts that the trial court abused its discretion in failing to make the award of maintenance retroactive to the date of filing of the petition for dissolution. She also maintains that the trial court should have awarded permanent maintenance.

The trial court has broad discretion in determining the propriety, amount and duration of a maintenance award, and its judgment will not be disturbed absent an abuse of discretion. In re Marriage of Rogers, 352 Ill. App. 3d 896, 817 N.E.2d 562 (2004). In addition, whether to make a modification of maintenance retroactive is also a decision within the trial court's discretion. Brandt v. Brandt, 99 Ill. App. 3d 1089, 425 N.E.2d 1251 (1981). In this case the record shows that an order of temporary maintenance in the amount of $150 per week was entered in August of 2001. That obligation was modified in April of 2002 to $300 per week in unallocated family support. In the dissolution judgment, respondent was awarded rehabilitative maintenance of

$2,000 per month for 36 months. This was in addition to child support paid by petitioner in the amount $2,517 per month.

With regard to the issue of retroactivity, the essence of respondent's argument is that the initial amounts were too low, which resulted in an overuse of credit cards and cash advances, totaling $38,000. She asserts that she does not have the financial ability to pay off the credit card debt, thereby justifying an award of retroactive maintenance. However, the trial court specifically addressed the issue of respondent's credit card debt, finding that "the credit card bills that were run up *** were outside the scope of what she should have done in this case without court permission. It was sort of a frolic on her own. I just think she is going to assume those own [sic] bills herself." The record supports the court's ruling, given respondent's testimony that among the items charged were a $1,300 suit of clothes, a $1,900 fur coat, $879 in sportswear, a $939 crystal ball, and over $600 for two wedding gifts. We find no abuse of discretion.

With regard to the permanency issue, section 504 of the Marriage Act sets forth various factors to be considered in awarding maintenance, including the income and property of each party, their present and future earning capacity, the time necessary to acquire appropriate education, training and employment, a party's ability to support herself, the duration of the marriage and the standard of living established during it, the age and physical and emotional conditions of the parties, and any other factor that the court finds to be just and equitable. 750 ILCS 5/504(a) (West 2004). A court is not required to give equal weight to each factor, so long as the balance struck by the court is reasonable. In re Marriage of Miller, 231 Ill. App. 3d 480, 595 N.E.2d 1349 (1992). Respondent argues that permanent maintenance should have been awarded because

8

she has never earned more than eight dollars per hour and she has some difficulty speaking English.

Maintenance is intended to be rehabilitative in nature to allow a dependent spouse to become financially independent. Permanent maintenance is appropriate, however, where a spouse is unemployable or employable only at an income substantially lower than the previous standard of living. Nevertheless, the recipient spouse has a good faith obligation to become self-sufficient, while using the maintenance award to help during the transition period. In re Marriage of Haas, 215 Ill. App. 3d 959, 574 N.E.2d 1376 (1991). Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently, but whether any reasonable person could have taken the position adopted by the trial court. See Marriage of Miller, 231 Ill. App. 3d 480, 595 N.E.2d 1349.

The trial court found that respondent was "college educated and is a bright, resourceful and employable person." The court commented on respondent's work experience in the medical laboratory field and stated that she was capable of earning income. The court also noted that the duration of the marriage was not long. These observations are supported by the record and provide insight into the court's rationale, which cannot be characterized as unreasonable. We find no abuse of discretion.

Respondent next contends that the trial court abused its discretion in denying her motion to allow her, three weeks prior to trial, to seek new counsel. The trial court noted in the dissolution judgment that respondent "employed five attorneys during the course of these proceedings, resulting in delays in resolving the issues and increased cost to

9

both parties due to the time required by each new attorney to familiarize himself or herself with the case." We find no abuse of discretion.

In a related issue, respondent also argues that the trial court should have ordered petitioner to pay her attorney fees. Generally, attorney fees are the responsibility of the party who incurred them, although section 508 of the Marriage Act does allow the court to order a party to pay another party's fees. In re Marriage of Keip, 332 Ill. App. 3d 876, 773 N.E.2d 1227 (2002); see 750 ILCS 5/508(a) (West 2004). The trial court's decision with regard to the payment of fees will not disturbed absent an abuse of discretion. Marriage of Keip, 332 Ill. App. 3d 876, 773 N.E.2d 1227.

In finding that respondent should be responsible for her own attorney fees, the trial court ruled that she had engaged in actions "designed to delay and harass" petitioner, including the failure to comply with discovery orders and orders for depositions, thereby prolonging the case and causing petitioner additional expense. The court also noted that petitioner had contributed $3,500 towards the fees of one of respondent's attorneys, and that the parties 2001 income tax return of $22,000 was equally divided for the purpose of paying attorney fees. Under the circumstances, we find no abuse of discretion.

Respondent also asserts that petitioner should have been ordered to pay the $38,000 in credit card debt accumulated during the parties' separation. As we noted in our discussion of retroactive maintenance, the trial court was skeptical of the necessity of much of that debt, characterizing it as a "frolic." We find no abuse of discretion.

10

Finally, respondent maintains that the trial court erred in ordering her not to move the childrens' residence more than 25 miles from Orland Park without petitioner's consent or by court order. We agree.

In general, a parent with primary physical custody of the children need not obtain judicial approval before moving to another location within Illinois (In re Marriage of Seitzinger, 333 Ill. App. 3d 103, 775 N.E.2d 282 (2002); In re Marriage of Wycoff, 266 Ill. App. 3d 408, 639 N.E.2d 897 (1994)), although the parties can impose geographic limitations by agreement Marriage of Seitzinger, 333 Ill. App. 3d 103, 775 N.E.2d 282; In re Marriage of Means, 329 Ill. App. 3d 392, 771 N.E.2d 501 (2002)). In addition, consistent with the trial court's broad powers in custody matters, it may condition custody upon the custodian living within a reasonable distance from the non-custodial parent to facilitate visitation. Marriage of Seitzinger, 333 Ill. App. 3d 103, 775 N.E.2d 282; In re Marriage of Manuele, 107 Ill. App. 3d 1090, 438 N.E.2d 691 (1982).

The only two reported cases in Illinois which directly address the propriety of court-imposed geographical restrictions both reversed the trial court. The Manuele court rejected a limitation to Sangamon county as unreasonably restrictive, while Seitzinger ruled that a restriction to Sangamon or Cass county was arbitrary because geographic location did not necessarily determine ease of visitation. Neither case provides much guidance in evaluating the reasonableness of a geographical restriction. Nevertheless, we believe that such limitations should only be imposed where the evidence presented establishes a specific need to do so. This is consonant with the principle that "[c]ustodial parents should not be expected to give up careers for the sake of remaining in the same geographical location." Marriage of Wycoff, 266 Ill. App. 3d at

11

416, 639 N.E.2d at 904, quoting In re Marriage of Good, 208 Ill. App. 3d 775, 778, 566 N.E.2d 1001, 1003 (1991). This is also in keeping with the general rule of allowing a custodial parent to move freely within the state. See Marriage of Means, 329 Ill. App. 3d at 397, 771 N.E.2d at 505 (describing "general rule" that custodial parent may move anywhere in Illinois without judicial approval).

The only justification offered by petitioner in support of the restriction imposed by the court is a provision in the joint parenting order granting petitioner a "right of first refusal" to take care of the children on those occasions where respondent would be away for more than two hours and would have engaged a babysitter. Petitioner argues that without the 25-mile restriction he would be unable to reach the children promptly, and his right to care for the children would be meaningless.

Assuming for the sake of argument that moving beyond the 25-limit would interfere with petitioner's ability to care for the children in respondent's absence, we do not believe that it justifies a preemptive geographic restraint. The case law suggests a presumption in favor of allowing freedom of movement within the state, and overcoming that presumption requires a more compelling reason than simply avoiding inconvenience to the non-custodial parent. As nothing else in the record appears to support the 25-mile restriction, we find that imposing it was an abuse of discretion, and it is reversed. We point out, however, that our ruling has no preclusive effect with regard to future determinations by the trial court concerning any relocation by respondent. See, e.g., In re Marriage of Main, 361 Ill. App. 3d 983, 838 N.E.2d 988 (2005) (in considering change of custody, trial court may consider whether custodial parent's decision to move to distant location within Illinois was motivated by desire to

frustrate non-custodial parent's visitation rights). We also note that our reversal on this issue and on the classification of the parties' home should not be construed as a criticism of the trial court. On the contrary, the court's professionalism and thoroughness was evident from its extensive notes and detailed judgment.

In summary, we reverse the trial court's classification of the Orland Park home as non-marital property. We remand for recalculation of the home's value, for a determination of any credits due to petitioner's non-marital estate, and for equitable distribution of the home as a marital asset. We also reverse the 25-mile residence restriction imposed on respondent. The remainder of the trial court's judgment is affirmed.

For the reasons stated above, the judgment of the circuit court is affirmed in part, reversed in part and remanded.

Affirmed in part and reversed in part; cause remanded.

McDADE and LYTTON, J.J., concur.