# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of McBride*, 2013 IL App (1st) 112255

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF LINDA McBRIDE, Petitioner-Appellee, v. KEVIN McBRIDE, Respondent-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-2255 |
| Filed | May 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's findings that the residence petitioner purchased before her marriage to respondent was her nonmarital property and that she rebutted the presumption that she made a gift to the marital property by signing a quitclaim deed making that residence joint property were upheld on appeal, but the finding that respondent intended to make a gift when he paid off petitioner's mortgage on that residence was an error in the absence of any agreement as to the title to that property, and petitioner was ordered to reimburse respondent for that payment; furthermore, respondent's contention that petitioner was guilty of dissipation of marital funds was properly rejected and the trial court's finding that the parties' predissolution letter concerning the distribution of a particular marital account was not intended to be a conclusive agreement for the distribution of marital funds was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-3441; the Hon. Renee Goldfarb, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on
Appeal

Barry H. Greenburg and Jewel N. Klein, both of Law Firm of Barry H. Greenburg, of Chicago, for appellant.

Linda S. Kagan, of Chicago, for appellee.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Linda McBride filed a petition for dissolution of marriage against respondent Kevin McBride on April 14, 2009. Following extensive discovery and motion practice, a trial was held concerning issues relating to the care of the parties' three children and the division of assets. Judgment for dissolution was granted on July 8, 2011.

¶ 2    Respondent now appeals, challenging portions of the trial court's conclusions concerning the division of property. Respondent first claims that the trial court erred in ruling that petitioner did not evidence an intent to gift the estate by signing a quitclaim deed to the 3312 North Seeley Avenue, Chicago, Illinois, property (3312 North Seeley) which she purchased prior to the marriage and classifying the property as nonmarital property. Next, he asserts that the trial court erred in determining that petitioner's loans to family were not a dissipation of marital funds. Respondent also contends that the trial court erred in considering a predissolution agreement of the parties evenly dividing the funds from their joint brokerage account. For the following reasons, we affirm in part and reverse in part the judgment of the trial court and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4    On April 14, 2009, petitioner filed the underlying petition for dissolution of marriage. Petitioner alleged that the parties were married on September 18, 1993, but had separated in March 2008 when she and the parties' three adopted sons moved out. Respondent remained in the marital residence at 3316 North Seeley Avenue, Chicago, Illinois. Petitioner alleged that irreconcilable differences had caused an irretrievable breakdown of the marriage and sought, *inter alia*, dissolution of the marriage, a fair and reasonable sum of maintenance for petitioner and support for the children from respondent, assignment of nonmarital property, and an award of a just proportion of the marital property. Petitioner also asserted a count sounding in breach of fiduciary duty and fraud, claiming that, through the fiduciary relationship of the parties, respondent deceived petitioner into signing a quitclaim deed for her nonmarital property at 3312 North Seeley, thereby placing the property into joint tenancy.

¶ 5    On July 13, 2010, petitioner filed an amended petition for dissolution of marriage. Petitioner deleted the second count for breach of fiduciary duty and fraud. Petitioner did not

mention the 3312 North Seeley property in the amended petition. However, she also filed a petition for partition of real estate seeking her just proportion of the properties located at 3312 and 3316 North Seeley Avenue, stating that the parties became co-owners by a deed of conveyance.

¶ 6    On August 16, 2010, petitioner filed a second amended petition. Petitioner alleged that the 3312 and 3316 North Seeley properties had appraised for $320,000 and $400,000, respectively, and a potential buyer had offered to purchase both for $825,000, but respondent had dissipated marital assets by refusing to sign a contract for that sale. Petitioner also filed an emergency petition to mandate respondent to sign real estate contracts, or have the court execute the contracts, for the 3312 and 3316 North Seeley properties to accept a new offer for $900,000 for the two properties. That emergency petition was denied and the matter advanced to trial without either property being sold.[1]

¶ 7    At trial, the evidence showed that petitioner purchased 3312 North Seeley in 1988 for $49,900. Petitioner purchased the property with her own funds and in her own name. Respondent moved in with petitioner at 3312 North Seeley in 1990 and they were married in September 1993. Before the marriage, petitioner paid for all of the house expenses from her own bank account, including while she and respondent lived there. After their marriage, the parties set up a joint account, deposited their paychecks into that account and paid for all their expenses from that account.

¶ 8    On the date of their marriage, respondent's personal bank account had a value of approximately $142,000. In January 1994, respondent withdrew $42,762.78 from that account to pay off petitioner's mortgage on 3312 North Seeley. In 1996, the parties purchased the adjacent property at 3316 North Seeley Avenue. Title in that property was in both parties' names and they moved into the house on that property. In 2002, the parties adopted their three sons from Russia and the family resided at 3316 North Seeley.

¶ 9    During the course of the marriage, petitioner maintained the couple's checking account and paid all the bills, with the exception of occasional checks that respondent would write for Boy Scout outings or similar events. Marital funds were utilized to pay the real estate taxes, utilities, repairs and improvements on both their properties. Title to 3312 North Seeley remained solely in petitioner's name.

¶ 10   In 2006, the parties mutually agreed to loan $8,600 to an acquaintance that was never repaid. Also around this time, petitioner lent her brother Steven a total of $5,000 and her brother Jim $1,200 without respondent's knowledge. Petitioner testified that those funds were repaid in 2006.[2]

---

[1]Respondent asserts that this court may take judicial notice of the fact that the 3312 North Seeley property was sold in December 2011 for $450,000.

[2]The actual dates of the loans and repayment are unclear as both the trial court's order and the stipulated bystander's report indicate the loans to Steven were made in 2007 and repaid in 2006 and the loan to Jim was made and repaid in 2006. Unfortunately the parties repeat these dates verbatim and do not clarify this error, and for the purposes of this opinion, we consider these loans

¶ 11      In March 2007, petitioner moved $50,000 of marital funds, without respondent's knowledge, into a new bank account in Michigan with her mother and brothers listed as account owners. At trial, $30,000 remained in this account after petitioner had withdrawn $8,000 to pay real estate taxes for 3312 North Seeley and $10,000 to pay attorney fees.

¶ 12      Petitioner testified that she retained a divorce attorney in January 2008. She met again with her attorney in March 2008 before telling respondent that she wanted a separation. That same month, petitioner and the children moved out of the marital residence. Respondent remained at the marital residence.

¶ 13      On October 4, 2008, petitioner incorporated her business, PMJ Lexical, Inc., and set up a business checking account. All of her earnings were subsequently deposited into that account. Later that month, without discussion with respondent, petitioner utilized $12,000 in marital funds to purchase a vehicle for herself and the vehicle title was placed in petitioner's name.

¶ 14      In November 2008 the parties discussed reducing their property taxes on the 3312 and 3316 North Seeley properties. Respondent prepared the required paperwork and set up a meeting at Chase Bank to sign the documents with a notary public. On November 28, 2008, petitioner signed a stack of documents, respondent later filed the documents, and the parties were able to lower their property tax bills on both properties. Included in the documents signed was a quitclaim deed for 3312 North Seeley titled "Quit Claim Deed, Joint Tenancy, Statutory (Illinois) (Individual to Individual)" that conveyed title from the grantor, petitioner, to "Kevin T. McBride and Linda M. McBride (married) not in Tenancy in Common, but in JOINT TENANCY." Both parties also signed a separate form entitled "Statement by Grantor and Grantee" that was attached to the deed with petitioner as the grantor and respondent as the sole grantee.

¶ 15      Petitioner testified that respondent did not explain the documents that she signed, she was unaware that she had signed a quitclaim deed transferring title, and that she had no intention of transferring title. In fact, on February 20, 2009, petitioner signed a listing agreement for 3312 North Seeley in her name alone, but soon learned that the title was in joint tenancy. Petitioner confronted respondent regarding the title and he told her that was the case and that he "deserved the house." Respondent testified that the parties contemplated changing the title to the property in 1994 but were too busy until November 2008. Petitioner asserted that they never discussed or contemplated such a transaction and that she never promised to repay respondent for the payment of the mortgage on 3312 North Seeley.

¶ 16      On December 8, 2008, respondent withdrew approximately $14,000 from a joint checking account into a personal account he had recently opened. Respondent also transferred $12,000 from a joint savings account to a personal savings account that was in his name alone. Respondent then began depositing his paychecks into his personal account rather than the joint account because he suspected petitioner had already begun depositing her paychecks into a separate account.

¶ 17      Respondent testified that it was petitioner's idea to evenly split the funds in their joint

as having occurred in 2006.

brokerage account at Signator One. Therefore they prepared, signed, and sent a letter to the brokerage firm on May 11, 2010, that stated "We intend to equally divide and close our joint brokerage account. Please split all shares in-kind equally and transfer to the following accounts." The parties directed the funds to two separate individual accounts with Signator One that they opened for this purpose. Petitioner testified, over respondent's objection, that she did not intend that one half of the money in that account would be all that she was entitled to from that account in the dissolution proceedings. Before judgment, petitioner spent approximately $40,000 from her account before judgment while respondent retained the entirety of his portion.

¶ 18       The trial court entered a judgment for dissolution of marriage on July 8, 2011. The court found that petitioner rebutted the presumption of marital property by presenting clear and convincing evidence that petitioner had no donative intent when signing the quitclaim deed and classified 3312 North Seeley petitioner's nonmarital property. In addition, it found that respondent's 1994 payment of the mortgage on 3312 North Seeley was intended as a gift. Because the real estate taxes had been paid from marital funds, petitioner was ordered to reimburse the marital estate for those taxes, a total of $75,000.

¶ 19       The trial court rejected each party's contention that the other had dissipated marital funds. It detailed each party's machinations during 2008-11 in preparation for dissolution. The court concluded that each party had paid roughly equal amounts on attorney fees out of marital funds during this time and petitioner's use of marital funds to pay real estate taxes was cured by the court's order for reimbursement of taxes paid. The court found petitioner's testimony that her brothers had repaid the loans she made in 2006 credible and rejected respondent's claim of dissipation. The court also rejected petitioner's dissipation claim against respondent regarding his expense account and per diem payments from his employer.

¶ 20       Also of relevance on appeal, the trial court determined that the letter to Signator One requesting equal distribution of the brokerage account "doesn't support anybody's argument. It doesn't say we–it doesn't say anything one way or another." Accordingly, it accepted petitioner's testimony on this issue and the remaining sum in each party's Signator One accounts were added to the final balance sheet prior to the trial court's final equal distribution of marital property. This appeal followed.


¶ 21                                    II. ANALYSIS

¶ 22       Respondent presents three issues for our review. Respondent asserts that the trial court erred in classifying 3312 North Seeley as nonmarital property. He contends that the trial court also erred in determining that petitioner's loans to family members were not dissipation of marital property. Respondent also argues that the trial court erred by disregarding the pre-dissolution agreement by the parties' concerning the distribution of their joint Signator One brokerage account.


¶ 23                              A. Nonmarital Property

¶ 24       Respondent challenges the trial court's classification of 3312 North Seeley as nonmarital property. A circuit court's classification of property as marital or nonmarital will only be

disturbed if the classification is against the manifest weight of the evidence. *In re Marriage of Weisman*, 2011 IL App (1st) 101856, ¶ 20. A decision is considered against the manifest weight of the evidence only where the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary or not based on the evidence presented. *Id.*

¶ 25        Under the Illinois Marriage and Dissolution of Marriage Act (Act), "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property." 750 ILCS 5/503(b)(1) (West 2010). Assets acquired prior to marriage, but in contemplation of marriage are to be considered marital property. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 651 (2009). In addition, nonmarital property may be transmuted to marital property by placing the property in joint tenancy with a spouse, which raises a presumption that a gift was made to the marital estate. *In re Marriage of Rink*, 136 Ill. App. 3d 252, 257 (1985). However, "[t]he presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a)" of section 503 of the Act. 750 ILCS 5/503(b)(1) (West 2010).

¶ 26        Among the exceptions in section 503(a) of the Act are property acquired by gift and property acquired before the marriage. 750 ILCS 5/503(a)(1), (6) (West 2010). To successfully rebut the presumption of gift and apply the exception of section 503(a)(1), the donor spouse must present clear, convincing and unmistakable evidence that there was no donative intent. *Rink*, 136 Ill. App. 3d at 257. Factors to be considered in determining whether the presumption of gift is overcome include the making of improvements, payment of taxes and mortgages, occupancy of the property as a home or business, and the extent of control of the property. *In re Marriage of Johns*, 311 Ill. App. 3d 699, 703 (2000).

¶ 27        Where a party rebuts the presumption of gift, any increase in the value of that property inures to the benefit of the owner "irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section." 750 ILCS 5/503(a)(7) (West 2010). If it is determined that one estate of property makes a contribution to another estate of property and it was not a gift, the contributing estate should be reimbursed from the estate receiving the contribution. *Johns*, 311 Ill. App. 3d at 703. Under the Act, "[t]he court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." 750 ILCS 5/503(c)(2) (West 2010).

¶ 28        Respondent argues that it is basic contract law that a signed legal document by a competent party, absent fraud or undue influence, speaks for itself. This citation to bedrock contract law principles ignores the effect of the Act and the specific provision providing for the rebuttable presumption in this case. While there is a signed quitclaim deed transferring title into joint tenancy, the evidence of record supports the trial court's finding that petitioner rebutted the presumption of marital property and its decision that 3312 North Seeley was nonmarital property is not against the manifest weight of the evidence.

¶ 29        Respondent is correct that in a case of strict contract interpretation, without fraud or

undue influence, which are not alleged here, petitioner's failure to read and understand the documents that she signed would not matter. However, this is a dissolution case and this issue involves the classification of marital and nonmarital property, issues specifically regulated by the provisions of the Act. Furthermore, respondent's argument seeks a finding that nonmarital property was transmuted to marital property by the signing of the quitclaim deed. Respondent contends that the trial court understated the importance of the presumption of gift because "[e]ven though property might be considered nonmarital under section 503(a) *** (750 ILCS 5/503(a) (West 2002)), courts will presume a spouse who placed nonmarital property in joint tenancy with the other spouse intended to make a gift to the marital estate." *In re Marriage of Berger*, 357 Ill. App. 3d 651, 660 (2005).

¶ 30    In *Berger*, the respondent husband did not overcome the presumption of gift despite a prenuptial agreement when he placed nonmarital property into a joint account. *Id.* at 660-61. The court found this was not enough to overcome the presumption because the husband had several accounts protected by the prenuptial agreement and he knew how to protect his property using those accounts. *Id.* In *Rink*, the husband overcame the presumption that nonmarital property placed in joint tenancy is marital property where he placed his nonmarital savings into joint accounts. *Rink*, 136 Ill. App. 3d at 255. The court found that the husband, who was blind at birth, rebutted the presumption of gift with his testimony that the funds were held in joint tenancy because he found it difficult to complete banking transactions unaided due to his condition and opened the joint account for more convenient access to his funds. *Id.*

¶ 31    Respondent asserts that, unlike the husband in *Rink*, petitioner is not blind but, as addressed above, is a competent, healthy and educated woman and there is no policy to support her argument. Respondent contends that because petitioner is an educated woman capable of understanding the documents she signed and the ramifications of signing a contract, her attempt to rebut the presumption should have been rejected. He adds that his use of $42,762.78 of his nonmarital funds to pay off the mortgage and subsequent use of marital funds on the property further support his claim.

¶ 32    There is no dispute that 3312 North Seeley was acquired before the marriage and nonmarital property. Until the November 28, 2008, quitclaim deed modified the title, the property remained in petitioner's name alone. While the title was modified, the facts of record present clear, convincing and unmistakable evidence that there was no donative intent by petitioner and the trial court's classification is not against the manifest weight of the evidence.

¶ 33    Petitioner purchased the property in her own name, with her own funds in 1988. She resided alone at that property until respondent moved in prior to marriage in 1990. Petitioner paid all expenses related to the property with her own funds, including while the parties lived together, until they were married in 1993. There is no evidence or allegation that petitioner purchased 3312 North Seeley in contemplation of marriage.

¶ 34    The parties separated in March 2008. In October and November 2008 the parties surreptitiously moved savings and earnings into separate individual accounts. Until November 28, 2008, when the parties executed several documents to reduce property tax

burdens, title remained in petitioner's name alone. Respondent prepared the necessary documents, including the quitclaim deed changing the ownership to joint ownership. Petitioner testified that she signed the quitclaim deed as part of the various documents but was not informed and did not understand that it altered the title to her property. No agreement, oral or otherwise, was adduced at trial indicating that petitioner intended to gift the property at any time.

¶ 35    While petitioner is not blind, the policy underlying the Act exceptions to the presumption of gift are clearly supported here as in *Rink*. Furthermore, unlike in *Berger*, petitioner did not act on her own in signing the documents with an understanding of any agreement. In this case, respondent's actions must also be considered, in the context of the timeline of the parties' relationship, as he prepared the documents for petitioner to sign and did not explain the documents. Petitioner certainly should have carefully considered what she was signing, but the manifest weight of the evidence indicates that she had no intent to gift 3312 North Seeley.

¶ 36    Respondent also contends that petitioner made a judicial admission in her pleadings that the parties were co-owners of 3312 North Seeley by virtue of a deed of conveyance and that she had abandoned her fraud allegations by removing that count from her amended petition. However, petitioner's pleading that the parties were co-owners by virtue of a deed of conveyance does not concede that the quitclaim deed and resulting joint tenancy reveal a donative intent. Petitioner merely concedes that the property was in joint tenancy by the deed of conveyance, she does not provide a judicial admission that 3312 North Seeley is marital property. At trial she successfully demonstrated that, while the deed existed, she did not understand the documents she signed due in part to respondent's actions in preparing and presenting the documents and that she had no intent to gift the property. Accordingly, the trial court's finding that petitioner rebutted the presumption of gift under the Act was not against the manifest weight of the evidence.

¶ 37    However, our analysis on this issue does not end there because the record and the finding that 3312 North Seeley is nonmarital property support respondent's contention that the trial court erred in finding that his payment of $42,762.78 was a gift. Petitioner purchased 3312 North Seeley in 1988, securing a mortgage with a deposit of her own funds and made all payments on the property until the parties were married in 1993. There was no dispute that respondent paid the mortgage with funds from his nonmarital account and that is clearly traceable and proven by the submission of the copy of his check to the mortgagor.

¶ 38    There is no evidence that the parties formed any agreement concerning the title to 3312 North Seeley. They purchased 3316 North Seeley in joint tenancy and made that their marital residence in 1996, but did not alter title to 3312 North Seeley until after they had separated and already began changing their bank accounts and separating funds. Because the parties paid for real estate taxes for 3312 North Seeley from their joint account, the trial court ordered petitioner to reimburse the marital estate $75,000 for real estate taxes paid for 3312 North Seeley from marital funds. It follows that respondent should be reimbursed for his contribution to that property as well.

¶ 39    Section 503(c)(2) of the Act provides a right to reimbursement for contributions made

by one estate which have enhanced the value of an item of property classified as belonging to another estate. Thus, respondent established a right to reimbursement in the amount of nonmarital funds he contributed to that estate. See *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 657-58 (1998). These funds should be reimbursed from petitioner's nonmarital estate. *In re Marriage of Snow*, 277 Ill. App. 3d 642, 649 (1996). Accordingly, the trial court's finding that respondent intended a gift by his payment of $42,762.78 on the mortgage for petitioner's nonmarital property was in error and petitioner is ordered to reimburse respondent that sum from her nonmarital property.

¶ 40                                         B. Dissipation of Marital Funds

¶ 41    Respondent argues that petitioner dissipated marital funds by making loans to family members and failing to prove at trial that the loans were repaid. Dissipation occurs where one party uses " ' "marital property for the sole benefit of [himself or herself] for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." ' " *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 374 (2008) (quoting *In re Marriage of O'Neill*, 138 Ill. 2d 487, 497 (1990), quoting *In re Marriage of Petrovich*, 154 Ill. App. 3d 881, 886 (1987)). Accordingly, for dissipation, a court must find "(1) the property at issue was marital property; (2) the spouse accused of dissipation used the property for his or her sole benefit for a purpose unrelated to the marriage; and (3) the spouse did so while the marriage was undergoing an irreconcilable breakdown." *In re Marriage of Daebel*, 404 Ill. App. 3d 473, 490 (2010).

¶ 42    The issue of the dissipation of marital property is a question of fact. *In re Marriage of Berger*, 357 Ill. App. 3d at 662. Therefore, the decision of the trial court on this issue will not be reversed unless against the manifest weight of the evidence and an abuse of discretion. *Id.* As petitioner notes, the trial court is in the best position to determine the credibility of a witness and accept or reject their testimony and we will not overcome such a determination absent an abuse of discretion. *In re Marriage of Elies*, 248 Ill. App. 3d 1052, 1058 (1993).

¶ 43    Petitioner testified that she lent her brother Steven a total of $5,000 and her brother Jim $1,200; however, she testified that those funds were repaid. Respondent asserts that no clear and convincing evidence was presented to rebut this charge by petitioner as she did not provide any documentary evidence that these amounts were repaid or deposited into the marital accounts. Without a written record of the deposit, respondent argues that the claim that the funds were repaid is a matter of "speculation, surmise, and conjecture." *Romano* v. *Municipal Employees Annuity & Benefit Fund*, 402 Ill. App. 3d 857, 864-65 (2010).

¶ 44    Respondent contends that the trial court noted this testimony and found it credible. However, immediately thereafter the trial court cited petitioner's claim that she owed her mother $20,000 to pay real estate taxes and attorney fees was not credible testimony. Respondent concludes that the absence of any writing proving that the loans were repaid, given petitioner's incredible testimony concerning the money she owed her mother, requires a finding that she dissipated marital funds by $6,200 and her award should be reduced by $3,100.

¶ 45    It cannot be said that the trial court abused its discretion in denying the dissipation claim.

The trial court listened to all the testimony and considered the evidence. It accepted some of petitioner's claims and rejected others. There is only testimony that the loans were made and that they were repaid, the court found that testimony credible and the funds were not dissipated. The court observed petitioner's testimony and reviewed the record and found the evidence clear that there was no dissipation.

¶ 46　　Further support is found in the record before this court concerning the third factor under *Daebel*, that the dissipation occurred while the marriage was undergoing an irreconcilable breakdown. Because courts cannot be charged with parsing the record to determine what action or argument started the exact date the breakdown begins, the point a marriage is undergoing an irreconcilable breakdown is the date a breakdown is inevitable. *In re Marriage of Romano*, 2012 IL App (2d) 091339. In this case, the loans were made around the same time the parties mutually agreed to advance a loan to an acquaintance. The parties were still residing together at this time. This was roughly two years prior to the parties' separation, over 2 1/2 years prior to petitioner's informing respondent she wanted a divorce, and three years prior to the filing of the petition for dissolution. This also predated any of the parties' withdrawals or opening of new bank accounts. The record does not support a finding that the breakdown was inevitable in 2006 and the trial court did not abuse its discretion in rejecting respondent's dissipation claim.

¶ 47　　　　　　　C. Predissolution Agreement to Equally Distribute Joint Account

¶ 48　　Respondent argues that the trial court improperly allowed petitioner to testify to the May 11, 2010, letter from the parties concerning the closing and disbursement of the Signator One account. Respondent argues that the language of the letter is clear and unambiguous and not open to interpretation. Citing general tenets of contract law, respondent contends that the letter agreement must speak for itself and extrinsic evidence may not be considered in interpreting the meaning of the agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999); *Gassnor v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1006 (2011). However, where a contract is found to be ambiguous, its construction is a question of fact that may be determined with the aid of parol evidence. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991).

¶ 49　　The trial court appropriately determined that the letter was not a conclusive and unambiguous agreement to remove the funds involved from the marital property calculus. The two sentence letter to Signator One, requesting the deposit of equal shares from the joint account to the parties' individual accounts, is not a clear and unambiguous statement relating to the dissolution proceedings. The trial court properly concluded that the letter "doesn't support anybody's argument. It doesn't say we–it doesn't say anything one way or another."

¶ 50　　Indeed, the letter simply contains a request from the parties for the closure of their joint account and an equal distribution of the funds into their two separate accounts. The letter does not speak to the dissolution proceedings or speak clearly and conclusively to any intent to affect those proceedings. Accordingly, the trial court acted within her discretion in allowing petitioner's testimony concerning the intent of the letter and the court's decision that the parties did not intend it to be a conclusive agreement with respect to the ultimate

distribution of marital property was not against the manifest weight of the evidence.

¶ 51                                    III. CONCLUSION

¶ 52        For the foregoing reasons we affirm the judgment of the trial court in part and reverse in part and order reimbursement of respondent $42,762.78 from petitioner's nonmarital property.

¶ 53        Affirmed in part and reversed in part; cause remanded with directions.