**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 190206-U

Order filed September 8, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| DEBORAH S. LANGEBERG, | ) | Tazewell County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-19-0206 |
| and | ) | Circuit No. 17-D-123 |
| | ) | |
| LEE LANGEBERG, | ) | Honorable |
| | ) | Timothy J. Cusack |
| Respondent-Appellant. | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the judgment of the court.
Justice Wright concurred in the judgment.
Justice Holdridge concurred in part and dissented in part.

**ORDER**

¶ 1   *Held*:  Trial court erred in finding husband stipulated that the marital residence was nonmarital property but did not err in awarding maintenance to wife and ordering husband to reimburse wife for nonmarital funds she spent on marital expenses.

¶ 2   Respondent Lee Langeberg appealed from a judgment of dissolution of his marriage to petitioner Deborah Langeberg, arguing that the trial court erred in distributing the parties' assets and in awarding Deborah maintenance. We affirm in part, reverse in part and remand.

¶ 3                                    FACTS

¶ 4            Petitioner Deborah Langeberg and respondent Lee Langeberg were married on June 28, 2002. The parties acquired the following property during the marriage: the marital residence located on Kingsbury Road in Washington, the prior marital residence on South Cummings Lane, also in Washington, and rental properties in East Peoria, Washington and Tremont. Throughout the marriage, Lee worked at Caterpillar Tractor Company (CAT), where he started in 1974 and remained employed at the time of the dissolution trial. Deborah had also been employed at CAT, beginning with part-time hours in 2002 and a becoming a full-time employee in 2003. In June 2016, Deborah was injured on the job and was thereafter terminated for unrelated misconduct. The parties separated the same month. Deborah remained at the marital residence on Kingsbury and Lee moved to the rental house on Cummings.

¶ 5            Deborah filed a petition for dissolution of the marriage in March 2017. Prior to trial on the petition, the court ordered the sale of three of the rental properties, the properties were sold, and the sale proceeds held in trust to be divided equally between the parties. The rental properties remaining at the time of trial, included houses on Kenwood Street, valued at $55,000; Main Street, valued at $102,000; and Kem Street, valued at $97,000, all in East Peoria.

¶ 6            A trial took place. Deborah testified that she lost her health insurance when she was terminated from CAT and had to purchase it on her own. She had had a couple of jobs since leaving CAT. She was terminated from one position and the other position was temporary. She was currently unemployed. In 2013 and 2014, Deborah received three inheritances totaling approximately $1 million. A portion of those funds was used to purchase the Kingsbury residence for $207,000. Title to house was held in both names. After Lee left the marital home in June 2016, Deborah was solely responsible for its costs and upkeep. Deborah listed its value on her financial

                                          2

affidavit as $235,000, with a debt of $92,882. After the parties separated, Deborah used $110,000 of her inheritance for repairs on the rental properties. She also paid $9000 on Lee's credit card which they used for repairs and improvements on the rentals. She invested in the rental properties in anticipation of reimbursement when the properties were sold. Deborah provided two accountings of the checks she wrote using her inheritance to pay marital expenses. The remaining inheritance funds included $360,000 in an individual retirement account (IRA) and $20,000 in another account. Deborah suffered a head injury on the job in June 2016, resulting in ongoing physical difficulties, including severe migraines, difficulty walking and balancing, and depression. According to Deborah, the doctors were unable to make a diagnosis, as a result of her brain injury and she was undergoing tests.

¶ 7    Lee testified that his financial affidavit indicated that his gross monthly income was $5240, that he had less overtime in 2018, and that he would probably not work at all in 2019. He earned between $60,000 and $80,000 per year in the several years prior to trial. The Cummings house was purchased before the marriage and was titled in both Deborah's and Lee's names. It was appraised at $155,000 and had a fair market value of $161,790. The mortgage was $100,676. He was not interested in the marital house but wanted to be awarded the Cummings house, which he agreed was marital property. Lee did not want to sell the Cummings property. At the time of trial, Lee was living at his girlfriend's house the majority of the time and allowing a friend to stay rent free at the Cummings house. Lee acknowledged the marital house was bought with funds from Deborah's inheritance. Lee had a credit card he and Deborah used throughout the marriage for their rental properties. The current balance was $11,000 and he had not made a payment in two years. His financial affidavit, however, indicated he paid $200 per month on the credit card. Lee

3

admitted he had not contributed any support to Deborah after their separation. His main expense was gasoline to travel to work and his girlfriend's house.

¶ 8    Deborah's supervisor, Don Pyatt Jr., testified. Deborah healed from her workplace injury and was back at work full time after it occurred. She was terminated for cause for making a threatening statement to another employee.

¶ 9    The trial court entered an order of dissolution dividing the parties' assets on December 4, 2018. It awarded Deborah the Kingsbury house as "nonmarital property by stipulation." The court awarded Lee a $4000 reimbursement for repairs he made to the house. The order stated the stipulated value of the Cummings house was $200,000 and awarded it to Lee. The court ordered the sale of the remaining rental properties. It also ordered that Deborah be reimbursed in the amount of $90,000, to be paid from the sale of the rental properties, finding Deborah presented clear evidence that $112,721.96 she used for repairs came from her nonmarital inheritance. The trial court further found that Deborah had no income and that maintenance was appropriate, ordering Lee to pay monthly maintenance in the amount of $1896.58 for 8 years and 10 months, subject to Deborah's reasonable efforts to find employment. Lee filed a motion to reconsider, which the court denied in part and granted in part, reducing the value of the Cummings property to its appraised value of $155,000. Lee appealed.

¶ 10                                    ANALYSIS

¶ 11    There are three issues on appeal: whether the trial court erred in awarding Deborah (1) the marital residence, (2) maintenance, and (3) a reimbursement for nonmarital funds contributed to the marital estate.

¶ 12    We first consider whether the trial court erred when it awarded Deborah the marital residence. Lee argues that the court erred when it found the Kingsbury house to be nonmarital

4

property by stipulation and awarded it to Deborah. According to Lee, he never stipulated the house was nonmarital and there is no evidence to support a stipulation.

¶ 13    A trial court is required to classify property as marital or nonmarital in order to distribute it in a dissolution action. 750 ILCS 5/503(a) (West 2018). Marital property includes all property acquired by either spouse during the marriage. 750 ILCS 5/503(a) (West 2018). Nonmarital property may include property acquired through inheritance. 750 ILCS 5/503(a)(1) (West 2018). A rebuttable presumption exists that property acquired after the marriage and prior to its dissolution is marital property. *In re Marriage of Olson*, 96 Ill. 2d 432, 438 (1983). The presumption may be overcome by clear and convincing evidence that the property falls under one of the statutory exceptions. *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 24. The burden is on the spouse claiming the property is nonmarital. *Id.* This court will not reverse a trial court's determination on the classification of property unless it was against the manifest weight of the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 14    Parties to a dissolution action may enter into an agreement regarding, *inter alia*, the disposition of property. 750 ILCS 5/502(a) (West 2018). A stipulation is an agreement of the parties regarding issues before the court. *In re Marriage of Galen*, 157 Ill. App. 3d 341, 344 (1987). When the parties to a dissolution proceeding stipulate to the value and division of the marital estate, that agreement is binding upon the court. *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 776-77 (1998). A party that stipulates to a matter cannot dispute it on appeal. *In re Marriage of Vondra*, 2016 IL App (1st) 150793, ¶ 21 (citing *Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.*, 233 Ill. App. 3d 574, 580 (1992)).

¶ 15    The trial court found the parties stipulated that the Kingsbury house was nonmarital. However, there is no evidence in the record of an oral or written stipulation between the parties

regarding the Kingsbury house. Rather, the evidence established the following. Lee admitted the house was bought with Deborah's inheritance funds but asserted it was listed in both their names. He also stated that he contributed up to $6000 toward improvements on the property. He wanted the house on Cummings and did not want the Kingsbury house. Deborah testified that she bought the Kingsbury house for $207,000 with funds she inherited, and that she did not recall that Lee contributed any funds or made any repairs on the property. In closing arguments, Deborah's attorney stated that Lee considered Kingsbury nonmarital property and that Lee wanted the Cummings property instead. Lee's attorney argued in closing that Deborah "admittedly" bought Kingsbury with her inherited funds, that Lee was not making a claim on it, and that Deborah could have "her property" although it was listed in both their names.

¶ 16    We will not construe Lee's testimony and the comments by the attorneys as evidence Lee was conceding that Laura was solely entitled to the Kingsbury house as a nonmarital asset. We do not consider any of these statements to constitute a stipulation. None of the evidence demonstrates an agreement between the parties that the Kingsbury house was nonmarital. In fact, the evidence shows the parties disagreed regarding the distribution of the Kingsbury house. At the start of the dissolution trial, the parties presented to the court the issues on which they agreed and those which were in contention, such as Laura's inheritance and division of the rental properties, including the house on Cummings. The Cummings house was bought before the parties were married and was valued at $155,000. Both Lee and Laura were listed on the deed. Neither party asserted the Cummings house was nonmarital property and Lee expressly conceded it was not nonmarital property. The Kingsbury house was purchased with funds Laura inherited in 2013. Lee testified that he and Deborah agreed she would keep the Kingsbury house and he would keep the Cummings property. It appears that each party opted to retain the home in which they resided after the

6

marriage broke down and they separated. This agreement does not translate to a stipulation the Kingsbury house was nonmarital property. Lee did not testify that he believed Kingsbury was nonmarital but stated only that he did not want anything to do with the Kingsbury house. This statement does not suggest that he agreed the Kingsbury house was nonmarital or that he waived any claim to it as a marital asset. We find that Lee's testimony regarding the Kingsbury house did not indicate he understood that he was stipulating that the property was nonmarital.

¶ 17 Although the Kingsbury house was bought during the marriage and the couple used it as their marital residence until Lee moved out, the court classified the Kingsbury house as nonmarital. A marital residence which both spouses owned is presumed to be marital property, even where one spouse paid for it out of nonmarital funds, absent clear and convincing evidence that rebuts the presumption. *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 706 (2006) (citing *In re Marriage of Johns*, 311 Ill. App. 3d 699, 703 (2000). Factors used to determine whether a party has overcome the presumption of a gift to the marital estate include making improvements, paying taxes and mortgages, occupying the premises, and the extent of control and management of the property. *Marriage of Johns*, 311 Ill. App. 3d at 703. Here, the record offers scant evidence regarding the Kingsbury house. The facts presented establish only that Deborah purchased the home with funds from her inheritance, Lee contributed some money to its maintenance, and the parties used the house as their marital residence until Lee moved out when they separated in June 2016. Although Deborah testified that she bought the house with nonmarital funds, there was no documentary support for that testimony or to establish how Deborah and Lee paid the taxes and the upkeep, other than Lee's testimony that he contributed approximately $6000. Because there was little evidence presented to overcome the presumption that the Kingsbury house was gifted to the marital estate, we reverse the trial court's classification of the Kingsbury house as nonmarital

7

property and remand for the trial court to determine whether Deborah can overcome the presumption that the Kingsbury property was a gift to the marital estate.

¶ 18    We next address the trial court's award of maintenance to Deborah. Lee argues that the maintenance award to Deborah was in error. He asserts that because Deborah was terminated from CAT due to misconduct, her unemployment is voluntary and her CAT income should be imputed to her, which would negate the need for maintenance.

¶ 19    To decide whether to award maintenance, the court considers the following factors, in relevant part: each parties' income and property, including the marital property apportioned and the nonmarital property of the spouse seeking maintenance, and each parties' financial obligations as a result of the dissolution; reasonable needs; realistic present and future earning capacity; any realistic present or future impairment of the earning capacity of the party against whom maintenance is sought; any time needed for the spouse seeking maintenance to acquire appropriate education, training and employment and whether the spouse may support herself with appropriate employment; and the marriage's standard of living and duration; each party's age, health, station, occupation, income amount and sources, vocational skills, employability, estate, liabilities, and needs; sources of public and private income; and any other factor the court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2018).

¶ 20    In determining maintenance, the benchmark is the reasonable needs of the spouse who is seeking maintenance compared to the marriage's standard of living and duration, the spouse's ability to become self-sufficient and the value of any nonmarital property. *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 615 (2004) (citing *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 972 (1992)). It is not required for a party to be reduced to poverty or impair his or her assets in order to qualify for maintenance to live according to the standard established during the marriage.

*In re Marriage of Harlow*, 251 Ill. App. 3d 152, 157-58 (1993). This court will not disturb a trial court's maintenance award unless it was an abuse of discretion. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 650 (2008).

¶ 21 To impute income, the court must find that the party is (1) voluntarily unemployed; (2) trying to evade his support obligation; or (3) has unreasonably failed to take advantage of an employment opportunity. *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶ 30. Any income imputed must align with the party's skills and experience. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 40 (citing *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 46). A party's previous employment may be considered when imputing income, but the court should not rely on outdated information that is no longer reflective of prospective income. *Id.* (citing *Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 47).

¶ 22 Lee relies on *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, for support that the court should have imputed Deborah's CAT income to her. In *Ruvola*, the husband was trained as a chemist, quit his job as an executive in an occupation using his education, had long periods of unemployment, did not seek any employment commensurate with his experience but rather worked in the sports recreation and food industries, often for minimum wages. *Id.* ¶ 38. *Ruvola* is distinguished. Lee did not present any evidence that Deborah was attempting to avoid her self-support obligation or failed to take advantage of other employment. In fact, she was temporarily employed at two jobs after her termination from CAT. Although Lee characterizes Deborah's unemployed status as voluntary, pointing to her termination for misconduct from CAT, Deborah was involuntarily terminated. Termination does not equate to voluntary unemployment, even when terminated for misconduct. See *Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 41 (considering husband's termination for misconduct to be involuntary). We find there is no

evidence Deborah was purposefully unemployed. The trial court did not err in refusing to impute income to Deborah.

¶ 23    In addition, a review of the statutory factors establishes the award of maintenance was proper. The parties' financial affidavits established that Deborah's monthly expenses outpaced her monthly income by $3564.87, while Lee had a monthly surplus of $725.24. While Deborah had substantial nonmarital assets, the bulk of the funds were invested, and she should not be required to deplete her investments in order to maintain the standard of living enjoyed during the marriage. The needs of both parties were reasonable. Lee had no impairment to his present or future earning potential, although he was expecting to retire in the near future. Even in retirement, Lee would enjoy income as a result of his CAT pension, which amount he failed to include on his affidavit. Deborah, on the other hand, had lost her last three jobs and was arguably suffering from medical issues that limited her employment options. Moreover, it would be unlikely she would ever earn the type of wages she did at CAT. Deborah's job opportunities were bleak, while Lee was likely to retire after a long career at CAT with sufficient pension income. Importantly, the court premised the maintenance award on Deborah seeking employment. However, given Deborah's employment prospects, it is unlikely she could obtain employment necessary to support herself in the standard of living established during the marriage. The parties had substantial assets, including multiple properties and vehicles. They did not appear to otherwise live extravagantly but they enjoyed ample resources. We find the maintenance award was not in error.

¶ 24    The partial dissent argues the maintenance order is improper because it fails to set forth explicit findings regarding the statutory factors, and contends this failure constitutes reversible error. See 750 ILCS 5/504(b-2) (West 2018). We respectfully disagree. "[I]t is not mandatory that the trial court make explicit findings for each of the statutory factors." *Blum v. Koster*, 235 Ill. 2d

10

21, 38 (2009). The lack of explicit findings does not require reversal where the record adequately provides a basis for review of the maintenance determination and the record supports the trial court's determination, as it does here. *In re Marriage of Connors*, 303 Ill. App. 3d 219, 230 (1999). The trial court heard evidence at the dissolution trial as summarized in relevant part above. Contrary to the opinion of the partial dissent, the evidence presented was sufficient to satisfy the applicable factors.

¶ 25     The partial dissent also challenges the trial court's calculation of the maintenance amount, finding its calculations varied slightly from the court's figures. The partial dissent is correct. The guidelines in place when the judgment for dissolution was entered instructed that for couples with annual incomes under $500,000, the maintenance amount was 30% of the payor's income, minus 20% of the payee's income. See 750 ILCS 5/504(b-1)(1)(A) (West 2018). The trial court determined Lee's annual income to be $75,864 based on Lee's financial affidavit. However, according to his second amended financial affidavit dated April 2018, Lee's monthly gross income was $6321.76, which actually calculates to an annual gross income of $75,861, a difference of $3 from the amount the court determined. Deborah lacked any income so the maintenance amount was based solely on Lee's income. Determining 30% of Lee's income calculates to be $1896.53 per month. The court calculated the monthly obligation to be $1896.58. We consider this discrepancy as well as the $3 difference in Lee's annual income to be *de minimis*. We will not require Deborah to reimburse Lee for the additional five cents he paid each month. Nevertheless, the court on remand may enter an order setting future payments at $1896.53.

¶ 26     We also reject the partial dissent's challenge to the duration of the maintenance award. The parties married in June 2002 and Deborah filed for dissolution in March 2017. The duration of the marriage was 14 years and 9 months. Per the guideline formula, the marriage's duration should be

11

multiplied by .60, which results in a maintenance term of 8 years and 10 months. The trial court awarded Deborah maintenance in accord with the statute. Contrary to the assertions of the partial dissent, the court's duration calculation was correct.

¶ 27     The last issue for our consideration is whether the trial court erred in awarding Deborah a reimbursement for nonmarital funds she contributed to the marital estate. Lee argues that the court improperly reimbursed Deborah for contributions she made from her nonmarital property to maintain and repair the rental properties. According to Lee, Deborah gifted those funds to the marital estate and failed to provide evidence that they were not a gift. Lee also argues that Deborah failed to submit a proper claim for reimbursement.

¶ 28     A party is entitled to reimbursement when it makes a contribution to the marital estate, notwithstanding transmutation, but clear and convincing evidence tracing the contribution to nonmarital property or rebutting the presumption of a gift must be presented. 750 ILCS 5/503(c)(2)(A) (West 2018). Where one estate contributes to another estate that was not a gift, the contributing estate is entitled to reimbursement from the estate that received the contribution. *In re Marriage of McBride*, 2013 IL App (1st) 112255, ¶ 27. The party seeking reimbursement bears the burden to establish it is appropriate. *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 61. A party's testimony may be sufficient to trace the contributions. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 174 (2000). A reviewing court will not reverse a trial court's decision to reimburse for contributions to the marital estate unless it was against the manifest weight of the evidence. *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 29.

¶ 29     Deborah testified and Lee agreed that he did not participate in the rental property upkeep or financing after the parties separated, albeit for some work he did in preparation for the sale of one of the rental properties. It was by necessity that Deborah contributed her nonmarital funds to

12

the marital estate as the rental income did not cover the rental expenses. She did not seek reimbursement for any rental expenses prior to 2016 and presumably the expenses were paid out of the marital estate. Prior to the breakdown of the marriage, Deborah and Lee operated the rental business together, with Lee contributing his carpentry and maintenance skills and Deborah contributing her business and decorating abilities. After June 2016, Deborah was left to fend for herself regarding the rental properties, including carpentry, maintenance, decorating, as well as any other issues regarding the properties. Lee did not contribute either time or money. Nevertheless, because the court ordered Deborah be reimbursed off the top from the sale of the rental properties and the remaining funds divided equally, Lee's payment was made from marital funds and not from his share of the marital distribution. Deborah expected that she would be reimbursed for her contribution once the rental properties were sold. She presented evidence tracing her contribution, including a summary of expenses incurred, a description of the expense, and identifying the corresponding rental property that benefited from the expenditure. Contrary to the partial dissent's characterization, this evidence is clear and convincing that Deborah contributed nonmarital funds to the marital estate and was entitled to reimbursement for them.

¶ 30       Deborah's documentation summarized the expenses incurred in 2016, 2017 and 2018. Deborah's exhibit No. 3 showed expenditures in 2016 of $109,802.38. She listed the amount of the expense, for what it was used and on which rental property. The expenses included the costs of kitchen and bathroom remodels; window treatments and staging; payments on the line of credit loan, mortgages, taxes and property insurance; repairs, including driveway, roof and electrical; utilities; and labor. Deborah's exhibit No. 4 listed the expenses she paid in 2017 out of her inheritance funds. These expenditures included utility bills; renovations, such as new flooring; repairs and installations; and expenses to ready the properties for sale. The total 2017 expenditures

13

for which Deborah sought reimbursement totaled $7921.01. She testified that she spent $4000 on a bathroom remodel in 2018. Deborah offered into evidence bank statements indicating transfers of funds from her personal account to pay the rental expenses. Her bank statements also established that she paid more than $9000 on the business credit card from her inheritance in June 2016 just after the parties had separated, which presumably paid the balance in full.

¶ 31    Lee refused to make any payments on the business credit card which had a balance in excess of $11,000 at the time of trial. He believed Deborah should have contributed to the payment. He acknowledged he did not perform any maintenance on the rental properties during the pendency of the proceedings or contribute any money or labor except to fix a sewer backup in one of the rental homes. Deborah said she paid the rental expenses out of the rent she collected but it was not adequate to cover the expenses so she also used funds from her inheritance with the expectation of reimbursement. The court reviewed Deborah's exhibits and determined that she contributed $112,721.96 in nonmarital funds and awarded her $90,177.57 in reimbursement, amounting to 80% of Deborah's contributions. The trial court did not explain its calculation. We do not know the trial court's reasoning for its calculation but find there was no error in requiring reimbursement to Deborah. The expenses were documented, the funds spent on marital property, and traced to Deborah's personal account. Although Deborah presented evidence tracing her nonmarital property to $112,721.96 of expenditures for the rental properties and is entitled to full reimbursement, she did not appeal the reduced reimbursement amount. We find the trial court did not err in ordering reimbursement.

¶ 32                                CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed in part, reversed in part and remanded.

14

¶ 34      Affirmed in part and reversed in part.

¶ 35      Cause remanded.

¶ 36      JUSTICE HOLDRIDGE, concurring in part and dissenting in part.

¶ 37      I agree that the trial court erred in finding that Lee stipulated that the Kingsbury residence was marital property. I therefore join the majority's judgment as to that issue. I write separately because, in my view, the trial court erred by ordering the reimbursement of certain expenses to Deborah's nonmartial estate. In addition, the trial court further erred by: (1) failing to make explicit findings establishing Deborah's entitlement to maintenance, as required by section 504(b-2) of the IMDMA (750 ILCS 5/504(b-2) (West 2018)); and (2) failing to show that it correctly calculated the amount and duration of maintenance according to the formula prescribed by section 503(b-1) of the IMDMA (750 ILCS 5/504(b-2) (West 2018)).

¶ 38      I will begin by addressing the trial court's reimbursement order. When property from one estate (marital or non-marital) is contributed to property from another estate, the contributed property is transmuted into the character of the recipient estate, but with a right to reimbursement in the contributing estate. *In re Marriage of Mayzner*, 144 Ill. App. 3d 645, 649 (1986). However, no reimbursement is permitted when the contribution is a gift. *Id.* There is a rebuttable presumption that a contribution of non-marital funds to a marital home held in joint tenancy constitutes a nonreimbursable gift. *Id.*; *In re Marriage of Rogers*, 85 Ill. 2d 217, 223 (1981) (ruling that a transfer from the nonmarital estate to the marital estate is presumed to be a gift to the marital estate). This presumption may be rebutted only by "clear and convincing evidence that no gift was intended." *Marriage of Rogers*, 85 Ill. 2d at 223.

¶ 39      Here, Deborah sought reimbursement for amounts she spent on maintenance and improvement of marital rental properties from her nonmarital inheritance. The rental properties

were held in joint tenancy by Lee and Deborah. All of the reimbursements that Deborah sought were for expenditures she made before the judgment of dissolution of marriage was entered in December of 2018, and some were for expenditures made before the parties had separated in June of 2016. The trial court awarded Deborah $90,177.57, which the court found constituted "80 percent of the total contributions" that Deborah had made to the rental properties. The court did not explain how it arrived at that figure. Nor did it indicate whether any portion of the reimbursement it ordered covered expenditures that Deborah had made prior to the parties' separation.

¶ 40    In my view, Deborah failed to rebut the presumption that the contributions she made to the rental properties before the parties separated and before the divorce action was filed were gifts to the marital estate. Although Deborah testified that she expected to get back what she invested in the properties, it is not clear whether she expected Lee to reimburse her for such investments or whether she merely expected that the properties would appreciate in value over time sufficiently to cover her expenses. As noted above, contributions to the marital estate are presumed to be gifts absent *clear and convincing evidence* to the contrary. It is unreasonable to presume that improvements made to martial property by one spouse *after the date of divorce* were a gift. *Capogreco v. Capogreco*, 61 Ill. App. 3d 512, 515-16 (1978). Arguably, the same might be said of contributions made after the parties' marriage has broken down irretrievably, such as where a petition for dissolution of marriage has been filed or where the parties have separated. Here, however, most of the expenditures sought by Deborah were made before she filed a petition for dissolution of marriage in March 27, 2017, and some of them were made before the parties separated in June 2016. Deborah failed to rebut the presumption that these contributions were

16

gifts to the martial estate. Thus, to the extent that the trial court awarded reimbursement for any such expenses,[1] the award was against the manifest weight of the evidence.

¶ 41    The trial court's maintenance order was also improper because it failed to fulfill the requirements of the IMDMA. Section 504(a) of the IMDMA lists 14 factors that a trial court must consider (along with any other relevant factors) in determining whether a party is entitled to maintenance. Section 504(b-2) provides that: "[i]n each case involving the issue of maintenance, the court *shall make specific findings of fact*, as follows: (1) the court *shall state its reasoning* for awarding or not awarding maintenance and *shall include references to each relevant factor* set forth in subsection (a) of this Section. ***" (Emphasis added.) 750 ILCS 5/504(b-2) (West 2018).

¶ 42    In this case, the trial court made no specific factual findings supporting its conclusion that Deborah was entitled to maintenance and made no reference to the factors set forth in section 504(a). This violation of the IMDMA's mandatory requirements constitutes reversible error.

¶ 43    Moreover, the trial court's order does not demonstrate that the court properly applied the formula prescribed by section 504(b-1) (750 ILCS 5/504(b-1) (West 2018)) in calculating the amount and duration of Lee's maintenance payments to Deborah. When I calculated the amount and duration of maintenance by applying the statutory formula to the relevant facts in this case, I arrived at values that were slightly different from those ordered by that the trial court. Because the trial court did not articulate how it applied the statutory formula to calculate the amount and duration of maintenance, we have no way of knowing whether the trial court's findings on those matters are accurate.

---

[1] Because the majority of expenses sought by Deborah were made prior to the filing of the dissolution action, the large amount of the trial court's reimbursement award suggests that it awarded reimbursement for at least some of these expenditures.

17

¶ 44       Accordingly, I would reverse the trial court's award of reimbursement and remand for a redetermination of reimbursement limited to contributions that Deborah's estate made to the rental properties after the parties separated in June 2016 or after the petition for dissolution was filed on March 27, 2017. I would also reverse the trial court's award of maintenance and remand the matter to the trial court with instructions for the trial court to: (1) make the specific factual findings required by section 504(b-2) of the IMDMA; and (2) show how the court applied the formula prescribed by section 504(b-1) of the IMDMA in reaching its conclusions as to the amount and duration of maintenance.